PAUL J. CULHANE, Special Adm'r of the Estate of Virginia K. Lally, f/k/a Virginia K. Sparks, Deceased, Plaintiff v. TIMOTHY M. LUDFORD, et al., Defendants and Third-Party Plaintiffs–Appellees (Marriott Corporation, Third-Party Defendant–Appellant).

Second District No. 2—85—0574

Opinion filed October 20, 1986.

Russell P. Veldenz, C. Thomas Hendrix, Richard G. French, and Dorothy F. French, all of French, Rogers, Kezelis & Kominiarek, of Chicago, for appellant.

Peter M. Trobe, of Brydges, Riseborough, Morris, Franke & Miller, of Waukegan, for appellees.

PRESIDING JUSTICE NASH delivered the opinion of the court:

The estate of Virginia K. Lally filed a wrongful-death action against defendants and third-party plaintiffs, Timothy Ludford and Interstate United Corporation (Interstate), based upon Ludford's alleged negligent operation of an Interstate van. These parties subsequently settled that action for $550,000, and defendants brought this action for contribution against third-party defendant, Marriott Corporation, the owner and operator of the site of the accident. After trial a jury determined Marriott was liable to the extent of 8% of the settlement amount and the trial court awarded third-party plaintiffs $43,348.96. Marriott appeals, contending its conduct did not proximately cause the injury because Ludford's actions constituted an unforeseeable intervening cause.

Marriott's Great America, a theme amusement park located in Gurnee, employs approximately 4,000 individuals during the summer months. Service corridors, or nonpublic roadways, run throughout the park and are used by Marriott employees and private vendors to make deliveries, haul trash, and perform work-related functions. A service corridor running in a westerly direction is located on the park's east end and is 69 feet 10 inches wide. Both sides are graded slightly downward toward the center to facilitate water drainage. A yellow traffic line, which is located 8 inches north of the center, runs the length of the corridor.

An administration building located on the north side of this corridor stands opposite a maintenance building and two warehouses. The west end of the administration building houses the Employee Relations Service Center, and the departmental offices of the corporation are in a separate division in the east end of the building. There is no means of access between the two divisions within the building itself. A management parking lot is situated north of the administration building and an employee parking lot lies immediately north of it. Between the administration building and the management parking lot is a sidewalk running the length of the building and continuing around its east end. Near the west end of the administration building, there is a fence across the sidewalk which is customarily locked during business hours. Prior to its relocation in July 1983 for security reasons, a security booth had been located adjacent to the fence, and the gate had been open during business hours. The booth is presently located on the west end of the building, and, therefore, travelers from the

east end of the building to the west end must use the service corridor.

In the service corridor itself, electric golf carts used by Marriott employees are charged by outlets in the south wall of the administration building. Nearby, two sets of air-conditioning equipment enclosed by cyclone fences are located against the center of the south wall. The fence surrounding the larger set of equipment extends 19 feet 4 inches from the building and is approximately 14 feet 2 inches from the center line of the service corridor. In addition, pickup trucks used to deliver food and merchandise throughout the park are customarily parked on both the north and south sides of the service corridor at 90-degree angles in parking slots maintained for such purposes. Bulk deliveries are made to the east end of the warehouses and do not use the service corridor.

On July 7, 1983, third-party plaintiff, Timothy Ludford, had been operating for several weeks a step van owned and maintained by third-party plaintiff, Interstate United Corporation, which stocked and serviced various vending machines in the park. The step van, which was 19 feet 9 inches long and 6 feet 8 inches wide, had no audible backup warning devices. Tests revealed the "blind spot" behind the van to be a triangular-shaped area extending 73 feet behind the vehicle; the distance from the ground to the outside rearview mirror was 80 inches.

At about 3 p.m. on July 7, 1983, Ludford drove into the service corridor and had traveled west approximately 225 feet when he noticed in his mirror that a case of soda had fallen out of the step van. He stopped, walked to the rear of the van and shut the overhead door. He did not notice any pedestrians at that time. He returned to the van, looked in both the right-hand and left-hand mirrors, and again did not see any pedestrians. He then stuck his head out of the open door on the driver's side and began to back up the van in an eastbound direction at 5 or 6 miles per hour.

At the same time, plaintiff's decedent, Virginia Lally, and Beverly Ann Skelley, both of whom were Marriott employees, were walking from the Employee Relations Service Center in the west end of the administration building to the offices located in the east end of the building. The two women were walking side by side facing traffic, with Skelley closest to the building, and therefore had their backs to the Interstate van. The van hit Lally, dragging her backwards a short distance, killing her.

On July 29, 1983, Lally's estate filed suit against Ludford and Interstate for wrongful death based on Ludford's negligent operation of the van and Interstate's negligent training of Ludford. On September

2, 1983, Ludford and Interstate filed a third-party claim for contribution against Marriott, alleging that Marriott was negligent in failing to provide safe pedestrian walkways or to warn employees of the dangerously congested condition of the service corridor. On October 23, 1984, Ludford and Interstate settled the underlying wrongful-death claim with Lally's estate for $550,000.

At trial on the third-party claim for contribution, Ludford testified that, prior to his employment by Interstate, he had never driven a van or truck and his training consisted solely of being shown the routes through the park and the machines to be serviced. He was not tested on his driving ability or given driving instructions. He stated he backed up 10 or 15 feet before striking Lally. On cross-examination he testified he knew the service corridor was used by pedestrians but did not see anyone in the corridor immediately prior to the accident. He also stated he was aware of the blind spot to the rear of the van and believed it was at least 5 feet in length. The noise level in the corridor was not loud at the time of the accident. Ludford was aware of alternatives to driving his van in reverse, such as making a 180-degree turn at the west end of the corridor.

Beverly Ann Skelley testified Lally and she walked as close as possible to the administration building, but the air-conditioning equipment and parked vehicles prevented them from walking directly alongside the building. She stated the truck backed up approximately 100 feet and struck Lally from behind them as they were about to walk around the fenced-in air-conditioning equipment. She did not hear any sound from the van prior to the accident.

James Kearney, safety administrator for Marriott, testified that Marriott's pickup trucks and vehicles used by private vendors in the service corridors were not required to have backup warning signals, although such devices could have been required by Marriott. He stated that park personnel attempted to limit the amount of vehicular traffic traveling throughout the corridor, which he described as moderate to light in the administration area, but not the pedestrian traffic. There had been no accidents in the corridor prior to Lally's death, and Kearney believed the design for the service corridor was a safe design.

A July 26, 1979, employee newsletter distributed by Marriott was admitted into evidence, which stated:

> *"HELP MAKE THE SERVICE CORRIDOR A SAFE AND UNCONGESTED AREA*
>
> The traffic in the Service Corridor continually reflects the busy pace of the park. The number of people and amount of material

that pass up and down the corridor each day is staggering. With as great a volume of man and machine confined to such a narrow space, we can't afford to have less than an orderly flow of both pedestrian and vehicular traffic."

Kearney testified the newsletter referred only to the central service corridor of the park, which was approximately 22 feet wide and was not used for parking. He described the amount of traffic in that corridor as moderate to heavy.

Hubert Thomiszer, a consulting mechanical engineer, testified that the denial of pedestrian access to the sidewalk north of the administration building forced employees to use the service corridor for pedestrian traffic and constituted a foreseeable, unreasonable hazard because the obstructions in the corridor required pedestrians to walk in the roadway. He stated the design and use of the corridor contributed to the accident because the air-conditioning equipment and the electrical connections from the building outlets to the golf·carts prevented employees from walking along the south side of the building, and the pitch of the roadway would tend to cause pedestrians to gravitate toward the center of the corridor. Thomiszer suggested that alternative designs of the corridor, such as mounting the air-conditioner equipment on the roof or erecting a sidewalk 6 inches high over the electrical conduits would have made the corridor safer for pedestrian traffic, although the preferred method would be to allow pedestrian access on the sidewalk north of the administration building.

On cross-examination Thomiszer agreed that some employees would continue to use the corridor for pedestrian traffic even if the sidewalk north of the building had been accessible. He also testified that an audible backup signal on the van would have been desirable.

Darryl Detwiler, a former Marriott security officer, stated pedestrian traffic in the service corridor varied from relatively light to heavy and that some employees walked down the middle of the corridor while others stayed on the sides. He also testified that Marriott had promulgated driving rules restricting reverse driving to necessary situations and requiring that drivers check the area before backing up.

Daniel Baker, a former security supervisor for the park, testified that concern over the amount of traffic in the entire service corridor was expressed at safety meetings prior to the accident, but the area remained unchanged. He also stated the traffic congestion in the corridor, which he characterized as relatively heavy, presented a hazard to pedestrians.

A former Marriott security guard, Charles Hoem, testified the ve-

hicular and pedestrian traffic in the service corridor was very heavy in the summer months and the noise level was very high. He stated that vehicular traffic generally straddled the center line of the corridor because the traffic lanes were too narrow due to the parked vehicles on either side and that it was not easy for vehicular and pedestrian traffic to pass each other in the corridor. On cross-examination Hoem stated the park's rules and regulations stated that pedestrians had the right-of-way even when walking illegally or unsafely.

At the close of third-party plaintiffs' case, third-party defendant Marriott submitted a motion for a directed verdict, which was denied by the trial court. Marriott then called Kenneth B. Jones, a route manager for Interstate, as an adverse witness. Jones testified Interstate did not have any hiring guidelines for its vending-machine routemen and did not provide Ludford with any safety training. Ludford was merely shown his assigned route and instructed to follow Marriott's vehicular rules.

James M. Peterson, an architect and structural engineer, stated the design of the service corridor was in accordance with accepted architectural and safety designs. Industry standards pertaining to service corridors require 10 to 12 feet on either side of the center line of the roadway, and at its narrowest point, from the air-conditioning fence to the center line, Marriott's corridor was 14 feet 2 inches wide. He testified that service corridors are customarily used by both pedestrians and vehicles and Marriott's corridor was a reasonably safe area for pedestrians if vehicles and pedestrians used ordinary care. On cross-examination Peterson stated that, although industry standards for service corridors did not take into account additional space for pedestrian sidewalks, which would constitute a minimum of 3½ to 4 feet, the width of the corridor exceeded space requirements for typical parking situations where both pedestrian and vehicular traffic is present.

After deliberations the jury determined Marriott was liable to the extent of 8% of the settlement amount of $550,000. The trial court subsequently entered judgment against Marriott in the amount of $43,348.96 and denied Marriott's post-trial motion for judgment notwithstanding the verdict. This appeal followed.

Marriott contends the trial court erred in denying its motions for a directed verdict and judgment notwithstanding the verdict. In either case the test is whether all the evidence, when viewed in an aspect most favorable to the opponent of the movant, so overwhelmingly favors the movant that no contrary verdict based on that evidence could ever stand. *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d

494, 510, 229 N.E.2d 504; *McMahon v. Richard Gorazd, Inc.* (1985), 135 Ill. App. 3d 211, 217, 481 N.E.2d 787, *appeal denied* (1985), 108 Ill. 2d 571; *Barreto v. City of Waukegan* (1985), 133 Ill. App. 3d 119, 134, 478 N.E.2d 581; *Holmes v. Sahara Coal Co.* (1985), 131 Ill. App. 3d 666, 671, 475 N.E.2d 1383.

■ We first note this action is governed by the provisions of the Contribution Among Joint Tortfeasors Act, which provides for a right of contribution "where 2 or more persons are subject to liability in tort arising out of the same injury to person or property, or the same wrongful death." (Ill. Rev. Stat. 1983, ch. 70, par. 302(a).) Interstate and Ludford, therefore, may obtain contribution from Marriott if they show that Marriott committed acts for which it is subject to tort liability, and that these acts combined with the tortious conduct of Interstate and Ludford to bring about Lally's death. (*Heinrich v. Peabody International Corp.* (1984), 99 Ill. 2d 344, 349, 459 N.E.2d 935; *Roberts v. Heilgeist* (1984), 124 Ill. App. 3d 1082, 1086-87, 465 N.E.2d 658, *appeal dismissed* (1984), 101 Ill. 2d 587.) The Act provides a mechanism whereby each defendant in a tort action may bear the loss according to the extent to which his conduct proximately caused the injury. (*Heinrich v. Peabody International Corp.* (1984), 99 Ill. 2d 344, 349, 459 N.E.2d 935; *Pipes v. American Logging Tool Corp.* (1985), 139 Ill. App. 3d 269, 274, 487 N.E.2d 424.) Accordingly, the traditional standards of tort liability are fully applicable in an action for contribution.

Marriott's primary contention is that its conduct was not a proximate cause of the accident and therefore it cannot be held liable for Lally's death. The essential elements of a negligence action are the existence of a duty of reasonable care owed the plaintiff by the defendant, a breach of that duty, and an injury proximately resulting from that breach. *Alm v. Van Nostrand Reinhold Co.* (1985), 134 Ill. App. 3d 716, 718, 480 N.E.2d 1263; *Magnone v. Chicago & North Western Transportation Co.* (1984), 126 Ill. App. 3d 170, 176, 466 N.E.2d 1261; *McColgan v. United Mine Workers of America* (1984), 124 Ill. App. 3d 825, 827, 464 N.E.2d 1166, *appeal denied* (1984), 101 Ill. 2d 567, *cert. denied* (1985) 470 U.S. 1051, 84 L. Ed. 2d 816, 105 S. Ct. 1752.

■ Marriott does not dispute that it had a duty to use ordinary care for Lally's safety, and the jury was correctly instructed as to that fact. Interstate and Ludford assert that Marriott also had a duty, based on the Occupational Safety and Health Act (OSHA) to furnish a place of employment free from recognized hazards likely to cause death or serious physical harm. (29 U.S.C. sec. 654 (1982).) However,

Interstate and Ludford did not plead violations of the OSHA statutes and the court properly refused to give jury instructions based on the OSHA statutes.

 As to the element of proximate cause, an individual is legally responsible for all of the "natural and probable results" of his actions, *i.e.*, for all consequences which an ordinary prudent person ought to have foreseen as likely to occur, although the precise injury which in fact occurred need not have been foreseen. *Neering v. Illinois Central R.R. Co.* (1943), 383 Ill. 366, 380, 50 N.E.2d 497; *Filipetto v. Village of Wilmette* (1985), 135 Ill. App. 3d 781, 784, 482 N.E.2d 358; *Scott & Fetzer Co. v. Montgomery Ward & Co.* (1984), 129 Ill. App. 3d 1011, 1020, 473 N.E.2d 421, *aff'd* (1986), 112 Ill. 2d 378, 493 N.E.2d 1022; *Nichelson v. Curtis* (1983), 117 Ill. App. 3d 100, 105, 452 N.E.2d 883.

Marriott first argues it cannot be held liable for Lally's death because it merely created a condition making the injury possible, while the subsequent conduct of Ludford actually caused the injury. In such cases, it has been held, the later conduct may act as an intervening efficient cause such that the condition itself is not a proximate cause of the injury. Marriott urges this court to apply the intervening-condition exception to the present dispute.

In *Storen v. City of Chicago* (1940), 373 Ill. 530, 27 N.E.2d 53, a vehicle struck a parked car with such force that it was propelled along the street curb until it reached a point with no curbing and veered up it, pinning plaintiff against a fire hydrant. Plaintiff sued the city for negligence in omitted curbing at that point, and our supreme court held the omitted section of curbing did nothing more than furnish a condition and was not an act concurrent with the negligence of the driver. (373 Ill. 530, 533-34, 27 N.E.2d 53.) Moreover, the court found the city could not have anticipated the "unusual and extraordinary" circumstances surrounding the accident. 373 Ill. 530, 536, 27 N.E.2d 53.

In *Fultz v. Myers* (1972), 5 Ill. App. 3d 230, 282 N.E.2d 488, a driver was proceeding north on a narrow lane in a home-trailer park when he struck a nine-year-old girl who had stepped from behind a trailer onto the street. The driver, who had been driving on the extreme east side of the lane because defendant's automobile was parked on the west side of the lane, sought recovery from defendant for creating a hazardous condition. The court held that defendant's conduct did nothing more than create a condition making an injury possible by the subsequent independent act of a third person and therefore defendant could not be held liable. 5 Ill. App. 3d 230, 234, 282 N.E.2d 488.

In *Ferguson v. Southwestern Bell Telephone Co.* (1972), 8 Ill. App. 3d 890, 290 N.E.2d 429, *appeal denied* (1973), 53 Ill. 2d 608, a truck driver whose diesel exhaust stack had become entangled in an overhead telephone cable climbed upon the frame of the wet tractor in the rain to use a broom to raise the cable while a friend backed up the truck. The court, which held that the cable had merely created a condition by which the injury was made possible, stated the extraordinary conduct of the plaintiff was not reasonably foreseeable by the telephone company and therefore acted as an intervening cause such that defendant's conduct was not a proximate cause of the injury. 8 Ill. App. 3d 890, 894-95, 290 N.E.2d 429.

In a more recent case, *Sheehan v. Janesville Auto Transport* (1981), 102 Ill. App. 3d 507, 430 N.E.2d 131, the plaintiff collided with defendant's illegally parked truck when he tried to avoid colliding with a car coming in the opposite direction, which had crossed over the center line. The court ruled the independent acts of the plaintiff and the other driver were not reasonably foreseeable by defendant and therefore defendant's act of illegally parking the truck was not a proximate cause of plaintiff's injuries. (102 Ill. App. 3d 507, 514, 430 N.E.2d 131.) And in *Vest v. City of Granite City* (1982), 106 Ill. App. 3d 36, 435 N.E.2d 755, *appeal denied* (1982), 91 Ill. 2d 581, a plaintiff who stopped to aid the driver of a stalled vehicle during a rainstorm was injured when another vehicle struck the rear of the stalled car and pushed it into plaintiff. In a suit against the city, plaintiff argued the first vehicle stalled and the third vehicle could not stop because of the flooding of the road, which was caused by the city's negligent installation and maintenance of its storm sewers. The court held the negligence of the third driver was the efficient proximate cause of plaintiff's injury and that any negligence on the part of the city did nothing more than create a condition by which the accident was made possible. 106 Ill. App. 3d 36, 39, 435 N.E.2d 755.

Similarly, Marriott argues its design and use of the service corridor merely provided an opportunity for the accident to occur while the subsequent conduct of Interstate and Ludford acted as an intervening cause of the injury. Marriott suggests it could not reasonably foresee Interstate's lack of employee screening or training, Interstate's negligent failure to promulgate rules of driving or install backup alarms in its vehicles, or Ludford's negligence in driving the van in reverse for an excessive distance when he was aware of the van's blind spot and that he could have made a 180-degree turn at the end of the corridor.

However, it is well established that the intervention of a

new, independent cause does not relieve one of responsibility for his negligent conduct if the intervening cause could reasonably have been anticipated as a natural and proximate result of his negligence. (*Bentley v. Saunemin Township* (1980), 83 Ill. 2d 10, 15, 413 N.E.2d 1242; *Parvin v. Sill* (1985), 138 Ill. App. 3d 325, 328, 486 N.E.2d 262; *Filipetto v. Village of Wilmette* (1985), 135 Ill. App. 3d 781, 784, 482 N.E.2d 358.) The cases cited by Marriott in support of its argument are clearly distinguishable from the facts of the present case. In those cases applying the intervening-condition exception, either the condition complained of was so innocuous that a resulting injury was not foreseeable, or the intervening events were so extraordinary that a reasonable person could not have anticipated them. Here, the congested state of the service corridor was widely recognized by Marriott employees and presented a condition in which resulting injury was clearly foreseeable. The record shows the corridor was used as a walkway by pedestrians and as a thoroughfare and parking lot by various types of vehicles. It was not unforeseeable or unusual that, under such circumstance, a pedestrian could be injured by a vehicle driven in reverse. We cannot say Marriott's conduct falls within the exception and was thus not a proximate cause of the death.

■ Moreover, proximate cause is ordinarily a question for the jury to decide (*Davis v. Marathon Oil Co.* (1976), 64 Ill. 2d 380, 395, 356 N.E.2d 93; *Thomas v. Northington* (1985), 134 Ill. App. 3d 141, 146, 479 N.E.2d 976, *appeal denied* (1985), 108 Ill. 2d 593; *Anderson v. Woodlawn Shell, Inc.* (1985), 132 Ill. App. 3d 580, 582, 478 N.E.2d 10, *appeal denied* (1985), 108 Ill. 2d 555), and the evidence supports the jury's finding of negligence on the part of Marriott. The record shows that the service corridor area was excessively congested with both pedestrian and vehicular traffic and that Marriott employees, including supervisory personnel, were aware of this fact; that pedestrians were prevented from walking alongside the administration building due to parked vehicles, golf cars and air-conditioning equipment; that a sidewalk which formerly served as an alternative walkway around the building was blocked by a locked gate; and that Marriott failed to provide its employees with warnings regarding the congested state of the corridor. Therefore, we cannot say the evidence so overwhelmingly favors Marriott that no contrary verdict could ever stand and we conclude that Marriott's motion for judgment *n.o.v.* was properly denied.

■ Marriott also argues that the causal connection between its alleged negligent conduct and the injury is based solely on speculation and conjecture because there was no proof that alternative designs of

the corridor or additional warnings to employees would have prevented the accident. Proximate cause is established only when there is a reasonable certainty that defendant's acts caused the injury. (*Morton v. F. B. D. Enterprises* (1986), 141 Ill. App. 3d 553, 560, 490 N.E.2d 995; *Young v. Texas Eastern Transmission Corp.* (1985), 137 Ill. App. 3d 35, 39, 484 N.E.2d 325, *appeal denied* (1985), 111 Ill. 2d 565; *Murphy v. Chestnut Mountain Lodge, Inc.* (1984), 124 Ill. App. 3d 508, 512, 464 N.E.2d 818.) Again, however, causal issues are issues of fact for the jury to determine. (*Davis v. Marathon Oil Co.* (1976), 64 Ill. 2d 380, 395, 356 N.E.2d 93; *Pharr v. Chicago Transit Authority* (1984), 123 Ill. App. 3d 205, 209, 462 N.E.2d 753.) The jury found, and we agree, there was sufficient evidence of a causal link between Marriott's conduct and Lally's death.

In a further argument based on proximate cause considerations, Marriott next contends Ludford's inattention to the surrounding circumstances was unforeseeable and acted as an efficient intervening cause to break the chain of causation between Marriott's conduct and Lally's death. In support, Marriott cites *Briske v. Village of Burnham* (1942), 379 Ill. 193, 39 N.E.2d 976, where an automobile in which plaintiff was a passenger struck a barricade across an abandoned street. In a subsequent suit against the village, our supreme court held the intervening cause of plaintiff's injuries was the driver's negligent inattention because the evidence at trial showed the barricade could easily be observed by one properly exercising his sight. (379 Ill. 193, 199-200, 39 N.E.2d 976.) Other cases have also ruled that inattentiveness to one's surroundings may constitute unforeseeable conduct. See *Jeanguenat v. Zibert* (1979), 78 Ill. App. 3d 948, 951, 397 N.E.2d 1235, *appeal denied* (1980), 79 Ill. 2d 631 (driver who collided with parked car was totally inattentive to the roadway and was facing and talking with passenger); *Barr v. Rivinius, Inc.* (1978), 58 Ill. App. 3d 121, 127, 373 N.E.2d 1063, *appeal denied* (1978), 71 Ill. 2d 606 (operator of construction shoulder spreader had 10 to 13 seconds to glance forward and see plaintiff standing in path of machine).

However, the present case is factually distinguishable from these cases, in which the operator of a vehicle had an unobstructed view of the surrounding circumstances but negligently failed to utilize that opportunity to prevent the accident. Here, the record shows Ludford looked to see if there were any pedestrians in the area and then attempted to compensate for the van's blind spot by checking both the left-hand and right-hand mirrors prior to driving and by looking backward through the open driver's door while backing up. His actions do not evidence the type of reckless inattentiveness found in the cases

cited, and we do not find that Ludford's conduct consisted of such inattentiveness to his surroundings as to be unforeseeable by Marriott.

■ In its final argument, Marriott asserts Ludford should have exercised more caution because he knew his vision was obstructed and his failure to do so relieves Marriott of any tort liability for Lally's death. In support, Marriott cites *Duffy v. Cortesi* (1954), 2 Ill. 2d 511, 119 N.E.2d 241, where our supreme court stated,

> "It is recognized under common law doctrines that where the vision of the driver of an automobile is obstructed for any cause, ordinary care requires him to proceed with more caution than where he has unobstructed vision. 2 Ill. 2d 511, 518, 119 N.E.2d 241.

This argument is misleading. The general rule enunciated by our supreme court does not create an exception to liability for a third-party's negligent conduct where a driver fails to exercise additional caution when his vision is obstructed. It merely addresses the degree of responsibility placed upon such drivers and the extent of their resulting liability. The jury in this case has already taken Ludford's lack of caution into account and its judgment is reflected in its apportionment of damages.

Accordingly, the judgment of the trial court is affirmed.

Affirmed.

LINDBERG and WOODWARD, JJ., concur.