MICHAEL STOJKOVICH, Plaintiff-Appellee and Cross-Appellant, v. MONADNOCK BUILDING *et al.*, Defendants (Westinghouse Electric Corporation, Defendant-Appellant and Cross-Appellee).

First District (4th Division)    No. 1—95—3049

Opinion filed May 16, 1996.

Hinshaw & Culbertson, of Chicago (Carlton D. Fisher and Bruce L. Carmen, of counsel), for appellant.

Hoffman, Burke & Bozick, of Chicago (Gary W. Bozick, David L. King, and Todd M. Hanson, of counsel), for appellee.

PRESIDING JUSTICE HOFFMAN delivered the opinion of the court:

Westinghouse Electric Corporation (Westinghouse) appeals from a jury verdict entered in favor of the plaintiff, Michael Stojkovich, in his suit for personal injuries resulting from a fall down an elevator shaft located in the Monadnock Building. Westinghouse claims that the trial court erred in denying its motion for a directed verdict and its post-trial motion for the entry of a judgment notwithstanding the verdict. The plaintiff has cross-appealed from the denial of his pretrial motion for leave to file an amended complaint seeking punitive damages against Westinghouse. For the reasons that follow, we affirm.

The plaintiff, along with his co-employees, attended a party held on the third floor of the Monadnock Building. After the party, the plaintiff and 11 others boarded an elevator on the third floor intending to go to the first floor. The elevator started its descent but stopped unexpectedly between the second and third floors. The occupants were unable to restart the elevator, and their attempts to summon

assistance through the use of an alarm bell and an intercom were unavailing. After 30 minutes to an hour passed, one of the occupants opened both the elevator car door and the second floor shaftway door. The floor of the elevator was positioned 24 to 33 inches below the top of the second floor shaftway door opening and approximately five feet above the second-floor landing. In addition to enabling the occupants to exit the stalled elevator car, opening the doors of the car and the shaftway resulted in a five-foot unprotected opening to the elevator shaft below the stalled car.

Once the doors were opened, the occupants began jumping out of the stalled car and down to the second-floor landing. Nine of the occupants exited before the plaintiff, several sustaining relatively minor injuries.

None of the occupants remaining in the stalled car or the nine occupants who exited the car before the plaintiff actually observed the plaintiff attempt to exit the elevator car. Several of the individuals who had exited before the plaintiff did, however, saw the plaintiff as he was in the act of falling down the elevator shaft below the stalled car. The injuries sustained by the plaintiff as a result of his fall rendered him unable to recall anything about the occurrence.

On pages 10 and 11 of its brief on appeal, Westinghouse argues:

"Absent evidence of what caused him to fall, the most Stojkovich could prove is that Westinghouse's alleged negligence created a condition which made falling down the shaft a possibility. Without some evidence that this condition did more than just set the stage for the fall, there was a failure of proof on the element of proximate cause."

Based upon this argument, Westinghouse concludes that the trial court erred in failing to grant its motion for a directed verdict at the close of all of the evidence and in failing to grant its post-trial motion for judgment notwithstanding the verdict.

The standard to be employed in directing verdicts or entering judgments *non obstante veredicto (n.o.v.)* is well settled. "[V]erdicts ought to be directed and judgments *n.o.v.* entered only in those cases in which all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based on that evidence could ever stand." *Pedrick v. Peoria & Eastern R.R. Co.*, 37 Ill. 2d 494, 510, 229 N.E.2d 504 (1967). Since Westinghouse has argued its entitlement to a directed verdict or a judgment notwithstanding the verdict only by reason of a failure of proof going to the proximate cause element of the plaintiff's claim, we will apply the *Pedrick* standard to the trial evidence relating to causation, taking as conceded that the plaintiff introduced sufficient

evidence establishing Westinghouse's duty and its breach of that duty.

Westinghouse has very succinctly stated its issue on appeal. As framed, the issue involves two considerations. We must determine, first, whether the acts or omissions of Westinghouse merely furnished a condition which made the plaintiff's injury possible, and second, whether the plaintiff introduced sufficient evidence to support a reasonable inference that the acts or omissions of Westinghouse caused the plaintiff's injuries.

■ Illinois has long subscribed to the proposition that if the acts of a defendant do nothing more than furnish a condition by which an injury is made possible by reason of some subsequent, independent act, the creation of the condition is not a proximate cause of the injury. *Merlo v. Public Service Co.*, 381 Ill. 300, 45 N.E.2d 665 (1942). For decades, reviewing courts in this state have sought to distinguish between an act that is the cause of an injury and an act that merely creates a condition upon which some subsequent act operates to produce an injury. We find no useful purpose to be served by an in-depth analysis of these cases. Suffice it to say that under the circumstances of this case, Westinghouse's condition argument fails as there is nothing in the record to support the conclusion that plaintiff's injury was the result of some unforeseeable independent act. *Culhane v. Ludford*, 148 Ill. App. 3d 763, 499 N.E.2d 686 (1986).

■ The act or omission of a defendant in breach of a legally recognized duty does not of itself form the basis of tort liability. An essential element of any tort action is a proximate causal relationship between the act or omission of the defendant and the damage suffered by the plaintiff. *Ney v. Yellow Cab Co.*, 2 Ill. 2d 74, 117 N.E.2d 74 (1954). The plaintiff's damage must be the natural and probable result of the defendant's breach of duty. *Neering v. Illinois Central R.R. Co.*, 383 Ill. 366, 50 N.E.2d 497 (1943). This element, proximate cause, embodies two distinct concepts: cause in fact and legal cause. *Lee v. Chicago Transit Authority*, 152 Ill. 2d 432, 605 N.E.2d 493 (1992). "Cause in fact can only be established when there is a reasonable certainty that a defendant's acts caused the injury or damage." *Lee*, 152 Ill. 2d at 455. Legal cause is essentially a question of foreseeability (*Lee*, 152 Ill. 2d at 456), that is, the plaintiff's injury must be of such a character as an ordinary and prudent person should have foreseen as likely to occur as a result of an act or omission, although it is not essential that the defendant should have foreseen the precise injury suffered. *Neering*, 383 Ill. at 380.

■ At the trial of this cause, Leo Fenili, Westinghouse's director of operations in Chicago, testified that it was foreseeable that people

trapped in a stalled elevator would try to escape and that they might be injured in their attempts. This testimony is sufficient in itself to support a finding of legal causation. Our analysis, therefore, will focus on causation in fact.

■ The precise question presented in this case is whether sufficient evidence was introduced at the trial of this cause to support a reasonable inference that Westinghouse's negligence was a cause in fact of the plaintiff's fall. An act or omission is not regarded as the cause in fact of an event if the event would have occurred without it. Put another way, an act or omission is said to be the cause in fact of an event if it was a material element and a substantial factor in bringing the event about. *Thacker v. UNR Industries, Inc.*, 151 Ill. 2d 343, 603 N.E.2d 449 (1992).

■ It is a fundamental principle of tort law that there may be more than one proximate cause of an injury and that a defendant can be held liable for its conduct whether it contributed in whole or in part to the plaintiff's injury, so long as that conduct was a proximate cause of the injury. *Nelson v. Union Wire Rope Corp.*, 31 Ill. 2d 69, 199 N.E.2d 769 (1964). What is, or is not, a cause in fact of an injury is ordinarily a question of fact to be determined by a jury from a consideration of all of the evidence presented at trial. *Greene v. City of Chicago*, 73 Ill. 2d 100, 382 N.E.2d 1205 (1978).

■ The plaintiff bears the burden of proof on the issue of proximate cause. *Smith v. Eli Lilly & Co.*, 137 Ill. 2d 222, 560 N.E.2d 324 (1990). However, as with any other factual element of a cause of action, proximate cause can be established by either direct evidence or inferentially by circumstantial evidence. When circumstantial evidence is relied upon, that evidence must support an inference that is reasonable and probable, not merely possible. See *Pyne v. Witmer*, 129 Ill. 2d 351, 543 N.E.2d 1304 (1989). When a party seeks to rely on circumstantial evidence, the conclusion sought must be more than speculative; it must be the only probable conclusion that could be drawn from the known facts. *Williams v. Chicago Board of Education*, 267 Ill. App. 3d 446, 642 N.E.2d 764 (1994). If the circumstantial evidence allows for an inference of the nonexistence of a fact that is just as probable as its existence, then the conclusion that it exists is not a reasonable inference but, rather, a matter of speculation, surmise, and conjecture. *Consolino v. Thompson*, 127 Ill. App. 3d 31, 468 N.E.2d 422 (1984). Speculation, surmise and conjecture are not proof and will not support a reasonable inference of causation. *Thacker*, 151 Ill. 2d at 354; *Smith*, 137 Ill. 2d at 232. To be sufficient to support a reasonable inference, however, circumstantial evidence need not exclude all other possible inferences. *Pyne*, 129 Ill. 2d at

369. "If as a matter of ordinary experience a particular act or omission might be expected, under the circumstances, to produce a particular result, and that result in fact has followed, the conclusion may be permissible that the causal relation exists." W. Keaton, Prosser & Keeton on Torts § 41, at 270 (5th ed. 1984).

The testimony in this case established that: the plaintiff, along with 11 others, was trapped in a stalled elevator; when the doors of the elevator and the shaftway were opened, a five-foot unprotected opening to the elevator shaft existed below the stalled car; nine of the trapped occupants exited the stalled car by jumping from the car to the landing below; and the plaintiff fell down the shaft below the stalled car. Further, there is no evidence that the plaintiff fell as a result of anything other than his attempt to exit the stalled elevator car as nine other occupants had done before him.

■ Under the known facts and circumstances of this case, even in the absence of an eyewitness to plaintiff's attempt to exit the elevator car, the inference that he fell down the unprotected elevator shaft while attempting to exit the stalled car is both reasonable and probable and could have been drawn by the jury. See *McKanna v. Duo-Fast Corp.*, 161 Ill. App. 3d 518, 515 N.E.2d 157 (1987). The total absence of any other inference that might be drawn from the known facts that is just as probable as the one drawn by the jury, and the fact that the inference drawn was not in itself a matter of pure speculation, distinguishes this case from the cases cited by Westinghouse in support of its arguments on appeal. See *Williams*, 267 Ill. App. 3d 446, 642 N.E.2d 764; *Leavitt v. Farwell Tower Ltd. Partnership*, 252 Ill. App. 3d 260, 625 N.E.2d 48 (1993); *Kellman v. Twin Orchard Country Club*, 202 Ill. App. 3d 968, 560 N.E.2d 888 (1990). The proximate causal relationship between the negligence of Westinghouse and the plaintiff's fall and resulting injuries is supported by circumstantial evidence and the reasonable inference that might be drawn therefrom. Consequently, we find no error in the denial of Westinghouse's motions for a directed verdict or judgment notwithstanding the verdict.

Next, we address the issues raised by the plaintiff's cross-appeal.

Prior to trial, the plaintiff filed a motion pursuant to section 2—604.1 of the Code of Civil Procedure (Code) (735 ILCS 5/2—604.1 (West 1994)) requesting leave to amend his complaint to include a count against Westinghouse grounded in allegations of willful and wanton misconduct and seeking an award of punitive damages. That motion was denied on September 1, 1994, and it is from that order that the plaintiff cross-appeals.

In support of his argument on this issue, the plaintiff contends

that he presented the trial court with ample evidence to establish a likelihood of being able to prove facts at trial sufficient to support an award of punitive damages and that the court erred in denying him leave to amend his complaint to seek such relief. In its brief, Westinghouse argues that the plaintiff not only failed to meet his burden on the issue, but that his motion to amend was untimely. During oral argument before this court, however, Westinghouse withdrew its timeliness argument.

■ Section 2—604.1 of the Code provides in pertinent part:

"In all actions on account of bodily injury ***, based on negligence, *** where punitive damages are permitted no complaint shall be filed containing a prayer for relief seeking punitive damages. However, a plaintiff may, pursuant to a pretrial motion and after a hearing before the court, amend the complaint to include a prayer for relief seeking punitive damages. The court shall allow the motion to amend the complaint if the plaintiff establishes at such hearing a reasonable likelihood of proving facts at trial sufficient to support an award of punitive damages." 735 ILCS 5/2—604.1 (West 1994).

Before addressing the question of whether the plaintiff met his burden of establishing a reasonable likelihood of succeeding on the merits of a punitive damage claim, we will address two difficulties that the wording of section 2—604.1 presents in the context of this appeal; namely, whether the statute applies to a prayer for punitive damages predicated upon allegations of willful and wanton misconduct resulting in bodily injury, and the procedure to be followed by a trial court in conducting the required hearing.

■ We believe that our first difficulty has been resolved by our supreme court in its decisions in *Poole v. City of Rolling Meadows*, 167 Ill. 2d 41, 47-48, 656 N.E.2d 768 (1995), and *Ziarko v. Soo Line R.R. Co.*, 161 Ill. 2d 267, 275-76, 641 N.E.2d 402 (1994). In both *Poole* and *Ziarko*, the court acknowledged that, depending upon the facts of any given case, " 'willful and wanton misconduct may be only degrees more than ordinary negligence.' " *Poole*, 167 Ill. 2d at 47, quoting *Ziarko*, 161 Ill. 2d at 275-76. We believe, therefore, that when the statute speaks in terms of actions for bodily injury based on "negligence," the legislature used the word "negligence" in a generic sense, as a term covering all types of nonintentional, nonstrict liability torts, including willful and wanton misconduct. Our finding in this regard is supported by a belief that a contrary interpretation would lead to the conclusion that the legislature either included the term "negligence" in the statute as surplus verbiage, or that it actually intended to expand the availability of punitive damages to tort ac-

tions based on a theory of simple negligence. The first of these conclusions is wholly incompatible with accepted rules of statutory construction (*People v. Lutz*, 73 Ill. 2d 204, 212, 383 N.E.2d 171 (1978)), and the latter is contrary to this state's well-settled rule that punitive damages are not awarded for acts of ordinary negligence (*Loitz v. Remington Arms Co.*, 138 Ill. 2d 404, 415, 563 N.E.2d 397 (1990)).

▉ As to the second difficulty, the statute's failure to set forth a procedure for the mandated hearing before a complaint may be amended to include a prayer for punitive damages, we note from the legislative history of the statute that the legislature itself seemed to be in a quandary over the issue. In fact, the legislative debates reveal that the sponsor of the statute indicated that the type of hearing to be conducted would be left to the discretion of the court, but that such a hearing might be based upon affidavits or, if the court deemed it appropriate, an evidentiary hearing might be held. 84th Ill. Gen. Assem., House Proceedings, June 30, 1986, at 13-14.

The record in this case reveals that the trial court, at the time it ruled on the plaintiff's motion to amend his complaint, had before it the plaintiff's proposed amendment, answers to interrogatories, and the transcripts of the discovery depositions of 12 witnesses. The transcript of the hearing on the plaintiff's motion reveals that the parties engaged in extended argument referencing the evidentiary material before the court in support of their respective positions and that the court considered both the evidentiary material and the arguments of counsel before denying the motion. We believe that the procedure employed by the trial court in this case was well within its discretion and provided the court with more than sufficient evidentiary material upon which to base a considered decision as to the likelihood of plaintiff proving facts at trial sufficient to support an award of punitive damages.

▉ Before we address the question of whether the trial court erred in denying the plaintiff's motion, we must first determine our standard of review. Whether the circumstances in a particular case justify an award of punitive damages is a question of law to be decided by the trial judge. *J.I. Case Co. v. McCartin-McAuliffe Plumbing & Heating, Inc.*, 118 Ill. 2d 447, 453, 516 N.E.2d 260 (1987); *Hammond v. North American Asbestos Corp.*, 97 Ill. 2d 195, 211, 454 N.E.2d 210 (1983). When an issue is decided as a matter of law, review of a trial court's decision on the matter is generally *de novo*. See *Hatton v. Money Lenders & Associates, Ltd.*, 127 Ill. App. 3d 577, 469 N.E.2d 360 (1984). The determination of whether the facts of a given case justify the imposition of punitive damages is a question of law; however, it has been uniformly held that an abuse of discretion stan-

dard will be applied on review. See *Motsch v. Pine Roofing Co.*, 178 Ill. App. 3d 169, 177, 533 N.E.2d 1 (1988); *Jensen v. Chicago & Western Indiana R.R. Co.*, 94 Ill. App. 3d 915, 937, 419 N.E.2d 578 (1981). The application of this deferential standard is understandable when the trial court makes its determination after evidence has been introduced and witnesses have testified. We believe that the application of an abuse of discretion standard would be appropriate in a review of the denial of a pretrial motion to amend pursuant to section 2—604.1 when the trial court conducts an evidentiary hearing at which witnesses testify and their credibility is a factor in the court's determination. However, when, as in this case, the trial court makes its determination based upon documentary submissions only, credibility is not a factor and, on review, we have before us all that was before the trial court. When the only question before a court is the legal conclusion to be drawn from a given set of facts and the credibility of witnesses is not in issue, review of a trial court's holding is *de novo*. See *People v. Foskey*, 136 Ill. 2d 66, 554 N.E.2d 192 (1990). Consequently, we will apply a *de novo* standard of review in this case.

■ In our analysis of whether the plaintiff met his burden of establishing a reasonable likelihood of proving facts at trial sufficient to support an award of punitive damages, we are guided by the holding of our supreme court in *Loitz*, wherein it stated:

"Punitive, or exemplary, damages are not awarded as compensation, but serve instead to punish the offender and to deter that party and others from committing similar acts of wrongdoing in the future. [Citations.] Because of their penal nature, punitive damages are not favored in the law. [Citations.] Appropriately enough, the initial decision whether punitive damages may be imposed in a particular case in this State is a matter normally reserved to the trial judge. [Citations.]

Describing the circumstances in which an award of punitive damages is appropriate, this court in *Kelsay v. Motorola, Inc.* (1978), 74 Ill. 2d 172, 186, stated:

'It has long been established in this State that punitive or exemplary damages may be awarded when torts are committed with fraud, actual malice, deliberate violence or oppression, or when the defendant acts willfully, or with such gross negligence as to indicate a wanton disregard of the rights of others (*Consolidated Coal Co. v. Haenni* (1893), 146 Ill. 614). Where punitive damages may be assessed, they are allowed in the nature of punishment and as a warning and example to deter the defendant and others from committing like offenses in the future. (*Eshelman v. Rawalt* (1921), 298 Ill. 192, 197.)'

See also Restatement (Second) of Torts § 908(2) (1979) ('Punitive damages may be awarded for conduct that is outrageous, because of the defendant's evil motive or his reckless indifference to the rights of others').

\*\*\* It must be recognized, however, that '[n]egligence is not the same as wantonness' [citation], and that '[p]unitive damages are not awarded for mere inadvertence, mistake, errors of judgment and the like, which constitute ordinary negligence' [citation]. 'Since the purpose of punitive damages is not compensation of the plaintiff but punishment of the defendant and deterrence, these damages can be awarded only for conduct for which this remedy is appropriate—which is to say, conduct involving some element of outrage similar to that usually found in crime. The conduct must be outrageous, either because the defendant's acts are done with an evil motive or because they are done with reckless indifference to the rights of others.' [Citation.] In this context, willful and wanton misconduct ' " 'approaches the degree of moral blame attached to intentional harm, since the defendant deliberately inflicts a highly unreasonable risk of harm upon others in conscious disregard of it.' " ' [Citation.]" *Loitz*, 138 Ill. 2d at 414-16.

■ Willful and wanton misconduct is a hybrid between acts considered to be negligent and intentional acts. In one case, the conduct may be only degrees more than ordinary negligence, while in another, it may be only degrees less than intentional wrongdoing. *Poole*, 167 Ill. 2d at 47; *Ziarko*, 161 Ill. 2d at 275-76. And, it is only when the conduct in issue approaches the degree of moral blame attached to intentional wrongdoing that an award of punitive damages is appropriate. *Loitz*, 138 Ill. 2d at 416.

■ Judged by these standards, we do not believe that the evidentiary material before the trial court at the time that it denied the plaintiff's section 2—604.1 motion evinces conduct on the part of Westinghouse rising to the level of wrongdoing necessary in order to justify an award of punitive damages. That evidentiary material, when viewed in its light most favorable to the plaintiff, supports the following scenario of events.

Several years prior to the plaintiff's injury, a major renovation of the Monadnock Building began. Westinghouse provided the equipment necessary to convert the building's elevators from manual to automatic operation. Additionally, Westinghouse contracted to maintain the elevators. In the year prior to the plaintiff's fall, the elevator in which he was riding experienced 17 unexpected stoppages, an inordinately high number. Five of those stoppages resulted in people being trapped. Even Westinghouse's employees admitted that the unexpected stoppage of an elevator is a serious problem that

must be addressed, and that an elevator should be shut down until the cause of the stoppage is identified and repaired. Nonetheless, Westinghouse never ordered the elevator in which plaintiff was trapped to be taken out of service. Each time that Westinghouse was informed of a malfunction prior to the plaintiff's accident, its repairmen serviced the elevator and thereafter it operated. However, they never identified the actual cause of the unexpected stoppages. After the plaintiff's fall, it was determined that a defect in the circuitry of the microprocessor that operated the elevator caused it to stop and not restart if the emergency button in the elevator car was pushed. Additionally, the elevator car in issue had an inoperable voice communication system. Two weeks prior to plaintiff's accident, the subject elevator was examined by an inspector retained by the building's insurance carrier. That inspection revealed a defective governor which was immediately replaced by Westinghouse.

Without question, the deposition of Westinghouse's director of operations, when compared to the testimony of its senior vice-president, revealed that the director of operations lacked an understanding of the safety problems posed by an elevator prone to unexpected stoppages. However, the fact remains that there was no evidence presented to the trial court that could support the conclusion that Westinghouse failed to respond to service calls, failed to attempt to repair the subject elevator when called upon to do so, or placed the elevator back in service knowing that its microprocessor was defective and remained unrepaired.

No doubt, from the facts presented, a jury might, as it indeed did, find Westinghouse negligent in the manner in which it maintained and repaired the elevator in which the plaintiff was trapped. But, absent evidence that Westinghouse deliberately refused to attempt repairs on the elevator or that it placed the elevator back in service knowing both the cause of its stoppages and that the cause had not been remedied, we fail to see how the conduct of Westinghouse approached the degree of moral blame attached to an intent to harm.

Based upon the foregoing, we find that the plaintiff failed to meet his burden of establishing a reasonable likelihood of proving facts at trial sufficient to support an award of punitive damages; therefore, we affirm the trial court's denial of his section 2—604.1 motion to amend.

Affirmed.

CAHILL and O'BRIEN, JJ., concur.