# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *Westlake v. C. House Corp.*, 2011 IL App (1st) 100653

---

| | |
|---|---|
| Appellate Court Caption | JUSTIN WESTLAKE, Plaintiff-Appellant, v. C. HOUSE CORPORATION, d/b/a Coach House, EDWARD WILLIAMS and COREY KELLEY, Defendants-Appellees. |
| District & No. | First District, Third Division<br>Docket No. 1–10–0653 |
| Filed | June 15, 2011 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In action for injuries plaintiff suffered when he was allegedly beaten by two bouncers employed by defendant's restaurant and bar, the judgment for defendants was upheld on appeal, since there was directly conflicting testimony as to who hit, kicked and punched plaintiff, it was not unreasonable for the trial court to reach the conclusion that someone other than the bouncers hit plaintiff, and the trial court's finding that plaintiff failed to show that it was more likely than not that the battery was perpetrated by defendant bouncers was not against the manifest weight of the evidence. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 07–M–32787; the Hon. Thomas David Roti, Judge, presiding. |
| Judgment | Affirmed. |

| Counsel on Appeal | Moskovic & Associates, Ltd., of Arlington Heights (Joanne Moskovic, of counsel), for appellant. |

Law Office of Michael W. Pinsof, P.C., of Chicago (Michael W. Pinsof, of counsel), for appellees.

| Panel | PRESIDING JUSTICE QUINN delivered the judgment of the court, with opinion.
Justices Neville and Murphy concurred in the judgment and opinion. |

## OPINION

¶ 1      Plaintiff, Justin Westlake, appeals from an order of the circuit court entering judgment for defendants, C House Corporation (d/b/a Coach House), Edward Williams and Corey Kelley, on three counts of plaintiff's third amended complaint alleging battery, willful and wanton conduct, and negligence against defendants. For the reasons set forth below, we affirm the circuit court.

¶ 2      Plaintiff's complaint arose out of an altercation that occurred in the early morning hours of April 25, 2007, outside of the Coach House, a restaurant and bar in Roselle, Illinois. On that date, plaintiff was at the Coach House with some friends and became involved in a verbal and physical altercation with other bar patrons and then punched defendant Edward Williams, a Coach House employee. According to plaintiff, after he hit Williams, another Coach House employee, defendant Corey Kelley, followed him to a parking lot across the street from the bar and beat him up. As a result of the altercation, plaintiff suffered several injuries to his face and his abdomen and was taken to the hospital, where he received stitches to his lip and above his eye. Plaintiff's third amended complaint, filed on January 5, 2010, alleged civil battery, two counts of negligence and two counts of willful and wanton conduct against the Coach House (counts I, VI, and VII, VIII, IX), civil battery and willful and wanton conduct against Edward Williams (counts II and III), and civil battery and willful and wanton conduct against Corey Kelley (count IV and V). Plaintiff sought money damages in the amount of $21,146, for the medical bills he incurred, as well as punitive damages.

¶ 3      Defendants filed an answer denying plaintiff's allegations and asserting the affirmative defenses of provocation, self-defense, and reasonable force. In addition, defendant Williams filed a counterclaim, alleging that plaintiff attacked him and seeking damages for the injuries he suffered and the medical bills he incurred. Prior to trial, plaintiff filed a motion to strike defendants' affirmative defense of provocation, which the trial court granted, and a motion to exclude evidence of plaintiff's intoxication, which the trial court denied.

¶ 4      On June 1, 2010, the parties filed an agreed statement of facts pursuant to Illinois Supreme Court Rule 323(d) (Ill. S. Ct. R. 323 (eff. Sept. 23, 1996)) in lieu of the record of

proceedings. The parties stipulated that a three-day bench trial was held from January 5, 2010 through January 7, 2010. At trial, plaintiff testified that he went to the Coach House on the evening of April 25, 2007 with several friends, including Kari Pace. Plaintiff drank between 5 and 10 beers and some time in the early morning hours just before the bar closed, he got into a verbal dispute with other bar patrons outside the Coach House. During this altercation, a female patron attempted to hit plaintiff and plaintiff, in turn, hit a male patron who was with her. Following this exchange, plaintiff hit defendant Edward Williams. Plaintiff and his friends then left the property and headed across the street to an empty parking lot where plaintiff's car was parked. Plaintiff testified that he was in the parking lot, being chased by several people, when he was attacked by someone he could not identify and was punched, thrown to the ground, and kicked in the head and body.

¶ 5    Kari Pace testified that she was at the Coach House with plaintiff on the evening of April 25, 2007, and was outside the bar during the altercation between plaintiff, the other bar patrons, and defendant Williams. She testified that after plaintiff hit Williams, she, plaintiff and another friend left and walked across the street to where plaintiff's car was parked. As they crossed the street, Pace said she heard footsteps and people running behind her. When she turned around, she saw Corey Kelley and a couple of other men wearing black clothes with a "Coach House" logo running toward them. She then saw Kelley hitting, kicking, and punching plaintiff, who was lying facedown on the ground trying to cover himself, and saw the other men in Coach House clothing fighting with other people in the parking lot.

¶ 6    Jason Jones testified that he was at the Coach House on May 29, 2005, when he became engaged in a verbal dispute with Michael Fritkin, a Coach House bouncer. Jones testified that Fritkin put him in a headlock and took him to the ground, breaking his nose. Jones also stated that after this altercation with Fritkin, he left the property and was standing on the sidewalk near Roselle Road when he was approached by Corey Kelley and another bouncer from the Coach House and was punched, knocked to the ground, punched again, and kicked.

¶ 7    Defendant Edward Williams was called as an adverse witness and testified that on April 25, 2007, he was working as a bouncer at the Coach House and that in the early morning hours, he saw plaintiff with his hands around a woman's throat. Williams broke up the altercation, and shortly thereafter, plaintiff hit him in the face with what Williams believed to be a glass bottle. Williams said that defendant then left the property and headed toward Roselle Road. Corey Kelley then approached Williams, who motioned toward Roselle Road. Williams then saw Kelley running in that direction until he lost sight of him. Williams testified that he did not tell Kelley that defendant hit him, did not cross Roselle Road, did not hit defendant, and was not involved in the incident in the parking lot. He also testified that he and Kelley were the only security personnel on duty that evening wearing black shirts with a "Coach House" logo.

¶ 8    Corey Kelley was also called as an adverse witness and testified that he was employed as a bouncer at the Coach House on the evening of the alleged incident and that around closing time, he was involved in a verbal altercation with plaintiff, his friends, and other Coach House patrons. Kelley said that during or after that verbal altercation, he encountered Edward Williams and saw that Williams had an injury to his face. He testified that he asked Williams what happened and Williams motioned toward Roselle Road, but did not tell him

that plaintiff had hit him. Kelley stated that he ran toward Roselle Road and that when he arrived in the parking lot across the street, he saw seven or eight people running around and fighting. He testified that he never hit plaintiff, that when he ran across Roselle Road he did not know that plaintiff had hit Williams, and that Williams never went across Roselle Road to the location of the altercation. Kelley testified that he saw plaintiff in the back of a police car and said that plaintiff was agitated and shouting. He also stated that he and Williams were the only security personnel on duty that evening wearing black "Coach House" security shirts.

¶ 9        Demetrios Mastos testified as an adverse witness that he owns the Coach House, that Williams and Kelley were employed as bouncers on the evening of the alleged incident and that they were wearing black "Coach House" security shirts. Mastos said he did not see the verbal or physical exchange between plaintiff, his friends, other patrons, and Williams. After the alleged incident, he spoke with the police and viewed security videos taken during the alleged incident.

¶ 10        Dr. Subhashish Agarwal testified by deposition that he was the emergency room doctor at Alexian Brothers Medical Center, where plaintiff was brought by ambulance following the altercation at the Coach House. Dr. Agarwal stated that he examined and treated plaintiff's wounds and lacerations by placing stitches above his left eye and his lip. He also ordered X-rays and CAT scans of plaintiff's head, C-spine, abdomen, pelvis, and chest and gave plaintiff several medications, including antibiotics and painkillers. Later, plaintiff was released from the emergency room. Dr. Agarwal testified that plaintiff was seen by another emergency room physician on May 3, 2007, for suture removal and rib pain, and that another chest X-ray was administered that day.

¶ 11        Testimony was elicited from one of the parties that Frank McCluskey, a bouncer at the Coach House, lay on top of plaintiff to protect him from being punched. However, defendants, Kelley, Williams, and Matsos testified that McCluskey was not on duty that evening.

¶ 12        The trial court granted plaintiff's request to admit the following exhibits into evidence: (1) a DVD of security video taken at the Coach House on the evening of the incident; (2) seven photographs of the Coach House, Roselle Road, and the parking lot where the incident occurred; (3) six photographs of plaintiff after the altercation; (4) plaintiff's medical bills; and (5) the evidence deposition of Dr. Agarwal. All exhibits were admitted pursuant to stipulation except for the photographs of plaintiff, which were admitted over defendants' objection. The security video that was admitted into evidence shows plaintiff hitting a male patron and then leaving with Kari Pace and heading toward the parking lot. Plaintiff is then seen walking back toward the building and hitting Edward Williams. Kelley then has an interaction with Williams, who points toward Roselle Road, and Kelley is seen sprinting in that direction and is followed shortly thereafter by approximately eight other men. The videotape does not show the altercation in the parking lot.

¶ 13        After the close of plaintiff's case, defendants moved for a directed finding as to counts II and III of plaintiff's complaint against Edward Williams and counts VI, VII, VIII and IX against the Coach House. The court granted the motion as to counts II and III but denied it

as to the remaining counts. The court also granted plaintiff's motion for a directed finding on defendants' affirmative defenses of self-defense and reasonable force.

¶ 14   Defendants called Kelley, Mastos and Williams as witnesses, who offered the same testimony as they did when called as witnesses in plaintiff's case. However, Williams also testified that he suffered injuries as a result of plaintiff hitting him, that he sought medical treatment, and that he incurred $828 in medical bills, which were admitted into evidence over plaintiff's objection.

¶ 15   On January 26, 2010, the trial court issued a judgment in favor of defendants, finding that plaintiff failed to show that it is more likely than not that the battery was perpetrated by defendants. The court also ruled in defendant Williams' favor on his counterclaim against plaintiff, finding that the videotape clearly showed that plaintiff hit Williams and, therefore, Williams sustained his burden of proof as to the elements of his cause of action. As to damages, the court relied on the paid medical bill submitted by Williams in the amount of $828 and entered judgment in Williams' favor in that amount. On February 25, 2010, plaintiff filed a notice of appeal seeking a reversal of the judgment in favor of defendants and a reversal of the judgment in favor of Williams' counterclaim.

¶ 16   On appeal, plaintiff first argues that the trial court erred in admitting Williams' medical bills into evidence because there was no testimony from a competent medical professional that the treatment was necessarily incurred as a result of plaintiff's actions. Relying on *Arthur v. Catour*, 216 Ill. 2d 72 (2005), plaintiff argues that in order to recover for medical expenses, a party must prove that he has paid or become liable to pay a medical bill, that he necessarily incurred the medical expenses because of injuries resulting from the defendant's negligence, and that the charges were reasonable for services of that nature. *Arthur*, 216 Ill. 2d at 81-82. In *Arthur*, our supreme court stated that payment of a medical bill is *prima facie* evidence of the bill's reasonableness based on the premise that "a consumer will not willingly pay an unreasonable or unusual charge for a service." (Internal quotation marks omitted.) *Arthur*, 216 Ill. 2d at 82. However, the court stated, "[t]he proponent must also present evidence that the charges were necessarily incurred because of injuries caused by the defendant's negligence. [Citation.] Only then have the evidentiary requirements for admission into evidence been satisfied." (Internal quotation marks omitted.) *Arthur*, 216 Ill. 2d at 82-83.

¶ 17   Plaintiff contends that, here, defendant Williams failed to present testimony from a medical professional attesting to the medical necessity of Williams' treatment, and therefore, the trial court should not have admitted the bill. Further, plaintiff contends that the medical bills were not itemized to explain the charges or the services rendered and, in one instance, one document was not even a bill but was simply a letter showing the balance due. Plaintiff asserts that he was prejudiced by the trial court's evidentiary decision because it resulted in an award of $828 in Williams' favor.

¶ 18   Defendant Williams argues that there was sufficient testimony in the record to permit the trial court to infer that the injuries inflicted upon him by plaintiff directly, proximately, and necessarily caused him to seek emergency room treatment immediately after the incident. Defendant asserts that proximate cause can be established by either direct evidence or

inferentially by circumstantial evidence. *Stojkovich v. Monadnock Building*, 281 Ill. App. 3d 733, 739 (1996). "When circumstantial evidence is relied upon, that evidence must support an inference which is reasonable and probable, not merely possible." *Stojkovich*, 281 Ill. App. 3d at 739. " 'If as a matter of ordinary experience a particular act or omission might be expected, under the circumstances, to produce a particular result, and that result in fact has followed, the conclusion may be permissible that the causal relation exists.' " *Stojkovich*, 281 Ill. App. 3d at 740 (quoting W. Page Keeton *et al.* eds., Prosser and Keeton on Torts § 41, at 270 (5th ed. 1984)). Defendant Williams contends that here, the trial court logically inferred from the evidence, which showed that he was hit in the face by plaintiff, that emergency room treatment was necessarily incurred. We agree.

¶ 19 We review a trial court's decision regarding the admissibility of evidence for abuse of discretion. *Aguirre v. City of Chicago*, 382 Ill. App. 3d 89, 98 (2008). An abuse of discretion occurs only when no reasonable person would rule as the trial court did. *Aguirre*, 382 Ill. App. 3d at 98. Here, the trial court found that videotape evidence presented at trial clearly showed that plaintiff hit Williams, a finding that plaintiff does not dispute. This is sufficient for the court to infer that plaintiff caused defendant's injuries, that those injuries probably required medical attention, and that the medical bills Williams incurred probably resulted from plaintiff's conduct. Plaintiff does not contest the reasonableness of these charges. Therefore, we find that the trial court did not abuse its discretion in admitting Williams' medical bills into evidence.

¶ 20 Next, plaintiff argues that the trial court's judgment in favor of defendants on count I (battery against C House Corporation) and counts IV and V (battery and willful and wanton conduct against Corey Kelley) were against the manifest weight of the evidence. In particular, plaintiff contends that the security video, which was viewed by the trial court, along with the trial testimony of all of the witnesses, particularly that of Kari Pace, who identified Kelley as the man who beat up plaintiff, makes it more likely than not that Kelley spoke with Williams, learned that plaintiff had hit Williams, and then followed plaintiff and beat him up in retaliation. Therefore, plaintiff asks this court to reverse the trial court's ruling in favor of defendants and remand the case to the trial court for a determination of plaintiff's damages.

¶ 21 A trial court's decision following a bench trial is reviewed to determine if the judgment is against the manifest weight of the evidence. *Gambino v. Boulevard Mortgage Corp.*, 398 Ill. App. 3d 21, 51 (2009). A judgment is not against the manifest weight of the evidence unless the opposite conclusion is clearly evident. *Gambino*, 398 Ill. App. 3d at 51. "Where there are different ways to view the evidence, or alternative inferences to be drawn from it, we accept the view of the trier of fact as long as it is reasonable." *People ex rel. Illinois Historic Preservation Agency v. Zych*, 186 Ill. 2d 267, 278 (1999).

¶ 22 In this case, there was directly conflicting testimony, with Kari Pace testifying that she saw Kelley hit, kick, and punch plaintiff and Kelley testifying that he did not hit plaintiff. A trial court is in a superior position to observe witnesses while testifying, to judge their credibility, and to determine the weight of their testimony. *Southwest Bank of St. Louis v. Poulokefalos*, 401 Ill. App. 3d 884, 891 (2010). Moreover, resolving conflicts relating to the credibility of witnesses and the weight to be afforded their testimony is the province of the

trial court. *1350 Lake Shore Associates v. Casalino*, 352 Ill. App. 3d 1027, 1040 (2004). Accordingly, a trial court's findings of fact are entitled to great deference by this court. *Southwest Bank of St. Louis,* 401 Ill. App. 3d at 891. Here, the trial court heard the conflicting testimony from Pace and Kelley and resolved conflicts in favor of defendants. This conclusion is not against the manifest weight of the evidence.

¶ 23 The other evidence presented at trial was a videotape of the events leading up to the incident in the parking lot. Plaintiff asserts that although the videotape did not show what occurred in that parking lot, the events depicted in it make it more likely than not that Williams told Kelley that plaintiff hit him and that Kelley went to the parking lot and beat up plaintiff in retaliation. However, where there are alternative inferences to be drawn from evidence, we accept the view of the trier of fact as long as it is reasonable. *Zych*, 186 Ill. 2d at 278. Here, it would not be unreasonable for the trial court to reach an alternative conclusion based on the evidence presented, such as that someone else who was in the parking lot hit plaintiff. Therefore, the trial court's finding that plaintiff failed to show that it is more likely than not that the battery was perpetrated by defendants was not against the manifest weight of the evidence.

¶ 24 For the foregoing reasons, we affirm the circuit court.

¶ 25 Affirmed.