ROSEMARY JOHNSON, Plaintiff-Appellant, v. MARK GODONIS *et al.*, Defendants-Appellees.

Second District    No. 2—92—1398

Opinion filed March 23, 1994.

Robert J. Long, of Lynch, Lumber & Wysocki, of Antioch, for appellant.

Robert J. Masini, of Diver, Grach, Quade & Masini, of Waukegan, for appellees.

JUSTICE DOYLE delivered the opinion of the court:

Plaintiff, Rosemary Johnson, appeals the circuit court's order denying her petition for a rule to show cause against defendants, Mark and Erin Godonis. The order effectively permits defendants to maintain a fence across a strip of land upon which plaintiff has an easement for ingress and egress. On appeal, plaintiff contends that the court erred in applying to this residential setting case law designed to protect farm animals. Alternatively, plaintiff contends that if a fence is to be permitted, it must have at least two gates to permit plaintiff adequate access to the channel and that only a chain-link fence should be permitted.

This case involves property located on a channel leading to Grass Lake in the Chain O' Lakes region. Plaintiff owns a house located on lots 3 and 4 in Jackson's Park subdivision. She and her husband purchased the lots in 1961. Since then, the Johnson family has kept a rowboat and maintained a pier in the channel. Defendants own lots 5 and 6 in the same subdivision.

Plaintiff's and defendants' lots are separated by a private road running east to west and leading from the public street to the channel. Apparently, the channel is T-shaped, running generally north to south directly east of the parties' lots. A branch of the channel runs east to west, connecting the north-south branch with Grass Lake. The east-west portion of the channel nearly runs into the private road.

All four lots in question are separated from the channel by a narrow strip of land. At some point defendants acquired title to this narrow strip. They then put up "No trespassing" signs, prevented plaintiff from launching her boat, and threatened her with arrest if she or her family entered the property. Plaintiff's son was arrested for trespass to land.

Plaintiff filed a complaint seeking to quiet title to the strip in her name. Following trial, the court rejected plaintiff's contention that she had acquired fee simple title to the disputed property. However, the court declared that she had an easement by virtue of covenants in the deeds given by the subdivision's developer to the original purchasers. The relevant covenant language provides:

> "And for the consideration aforesaid, the grantors hereby convey and warrant to the party of the second part a right of way

easement and privilege and authority to second party to use along with others such right of ways as may from time to time be granted them by the parties of the first part to a certain channel and channels to be hereinafter constructed into Grass Lake together with the right to use with others a frontage on the ditch for landing of boats, Grantors expressly reserving the right to change the said right of ways and place for landing boats above mentioned providing some other reasonable landing place for boats is made."

The court declared that plaintiff has an implied easement for "access and egress" across the property leading to the channel to Grass Lake for the landing of boats and to maintain a pier. The judgment required plaintiff to remove the pier she maintained in front of lot 4, but permitted her to erect a pier in front of lot 3. The court also ordered plaintiff to remove a grape arbor from the disputed strip and prohibited the parties from interfering with each others' rights as declared in the judgment. Finally, the judgment provides that defendants are the holders of fee title to the property and "shall have the right to maintain all of said property and they shall not take any action that would impair or impede the right of access across the easement."

The court entered the judgment October 2, 1992, and no appeal has been taken therefrom. On October 21, 1992, plaintiff filed a petition for a rule to show cause why defendants should not be held in contempt of court. The petition alleged that defendants intended to build a fence along the front of plaintiff's property.

Defendants filed a response in which they admitted intending to put up a fence. They denied any intent to deny plaintiff access to the channel, stating that they intended to put in a gate.

After hearing the parties' arguments and considering evidence consisting of photographs and diagrams demonstrating plaintiff's lines of sight from her house toward the channel, the court denied the rule to show cause. The court held that defendants could erect a five-foot solid wood stockade fence, provided that they installed a gate at least six feet wide somewhere in front of lot 3.

Plaintiff perfected this appeal. Plaintiff primarily contends that the court erred in finding that the fence was a reasonable restriction on her right of access to the channel. She maintains that the court erred by relying on "ancient caselaw [sic]" developed in an agricultural setting and intended for the protection of crops and livestock. Plaintiff relies on more recent cases holding that the placement of a gate or other barricades across a right-of-way unreasonably interferes with the use of the right-of-way.

Defendants respond that the trial court properly found that a fence such as the one they proposed is not an unreasonable interference with plaintiff's easement. They contend that plaintiff's easement is limited to launching her boat. They further argue that requiring her to open a gate will not unduly restrict that right and the five-foot-high fence will not restrict her line of sight to the channel. Finally, defendants contend that, given the acrimonious nature of the relationship between the parties, "some type of delineation between the property lines is very reasonable."

Defendants rely, as did the trial court, primarily on *Green v. Goff* (1894), 153 Ill. 534, and other cases of similar vintage. In *Green*, plaintiff conveyed the subject parcel, but reserved an easement for access to a pond so that he could water his livestock. The original grantee sold the premises to defendant, who wanted to farm the parcel. The supreme court adopted the appellate court's opinion, which held that fencing the tract was reasonable, apparently because it was necessary to protect the crops from being trampled by plaintiff's livestock. The appellate court noted that the grant did not expressly provide for an open way and that the only limitations on the right of the grantee were those necessary to the proper use of the right-of-way. *Green*, 153 Ill. at 536; see also *Truax v. Gregory* (1902), 196 Ill. 83 (owner of right-of-way could not tear down gate erected by fee owner to keep cattle from wandering onto road).

More recent cases have been more solicitous of the rights of the easement holder. In *Ogilby v. Donaldson's Floors, Inc.* (1958), 13 Ill. 2d 305, 311, the court observed that the reservation of an easement carries with it all rights incidental to the reasonable enjoyment of the easement. On the other hand, the owner of the servient estate maintains the right to use the property for any purpose consistent with such reasonable enjoyment. The court concluded that no hard-and-fast rule can be formulated to determine whether a given use by the servient estate owner is reasonable. *Ogilby*, 13 Ill. 2d at 310.

In another case, the court held that "in our modern age" the placing of obstructions such as gates across a right-of-way is antagonistic to the right of ingress and egress and limits its use. (*Schaefer v. Burnstine* (1958), 13 Ill. 2d 464, 468.) The court observed that the "use which defendants wish to make of this right of way, by placing a gate across it, is not a reasonable use, and obviously is of great inconvenience to plaintiff without a corresponding advantage to defendants." *Schaefer*, 13 Ill. 2d at 469; see also *Nopolous v. McCullough* (1981), 95 Ill. App. 3d 852, 853-54 ("The installation of gates, posts and fences by the owner of the servient estate is antagonistic to the right of ingress and egress over the right of way and is improper

unless circumstances exist which make such obstructions reasonable").

Recently, in a case neither party cites, this court applied *Schaefer* and *Ogilby* in an urban context. The court required the removal from the rear of a restaurant of a dumpster which blocked a neighboring business's easement for access to a side entrance. (*Erday's Clothiers, Inc. v. Spentzos* (1992), 228 Ill. App. 3d 540, 550.) The evidence showed that the dumpster was necessary to the restaurant's operation and that plaintiff made relatively infrequent use of the side entrance. Nonetheless, the court required the replacement of the dumpster with a smaller mobile one. The court stated, "The rights of the owner of the easement are paramount [citation], and the law is jealous of the claim of an easement." *Erday's Clothiers*, 228 Ill. App. 3d at 549.

Defendants attempt to distinguish cases such as *Ogilby* and *Schaefer* on the grounds that they dealt with either agricultural or commercial property, while this case involves defendants' "backyard." They contend that since none of the cases cited are truly on point, we should defer to the trial judge's determination.

Our research has not uncovered any Illinois cases which address a similar factual situation. Out-of-State cases which have considered the fencing off of an easement for access to a body of water have almost uniformly found the fence to be an unreasonable interference. In *Waldschmidt v. Vito* (1962), 228 Md. 328, 179 A.2d 884, the court held that the limitation to a single gate of access to a waterfront easement was unwarranted where the basic grant was unlimited. *Waldschmidt*, 228 Md. at 330, 179 A.2d at 885-86, following *Simon Distributing Corp. v. Bay Ridge Civic Association* (1955), 207 Md. 472, 114 A.2d 829.

Similarly, in *Maier v. Mayor & Council* (1954), 33 N.J. Super. 309, 110 A.2d 140, defendant owned fee title to a strip of land separating plaintiffs' home from a lake. Plaintiffs had an easement across the strip for access to the lake. Defendant, "for some reason the merit of which is not satisfactorily elucidated," erected a fence across the strip, leaving only a narrow gate. The court held that free access to the lakefront did not permit defendant to restrict such access to one gate. *Maier*, 33 N.J. Super. at 315, 110 A.2d at 143.

Applying these principles to the facts of this case, we conclude that the trial court erred in permitting defendants to construct the fence. Other than their desire to separate themselves from plaintiff, defendants have never expressed any reason for the fence. Plaintiff contends with some justification that the fence is purely for spite. We also cannot agree with defendants' contention that the fence encloses only their backyard. The fence apparently extends across the entire

front of plaintiff's property and across the private road. The parties do not dispute that the strip is too narrow to be buildable and serves no apparent purpose except to provide access to the channel. We also note that since the briefs were filed in this court, defendants have sold their house, while retaining title to the narrow strip. This fact further diminishes any claim that the fence is necessary for privacy.

Plaintiff concedes that the inconvenience of using the gate is relatively slight, but contends that other considerations, such as aesthetics, tip the balance in her favor. Cases such as *Waldschmidt* and *Maier* stand for the proposition that unrestricted access to lake-front property has an inherent value. In light of the lack of utility of the fence to defendants and the value of unhindered access to the channel to plaintiff, the court erred in permitting the construction of the fence. Because of our disposition of this issue, we need not reach plaintiff's alternate contentions.

For the foregoing reasons, the judgment is reversed, and the cause is remanded to the circuit court with directions to permit defendants a reasonable amount of time to remove the fence.

Reversed and remanded with directions.

COLWELL and PECCARELLI, JJ., concur.