2026 IL App (1st) 250421-U

No. 1-25-0421

Third Division
March 4, 2026

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

_____

|  |  |  |
|---|---|---|
| KATHY DEFANTE and JORGE MORALES, | ) | |
| | ) | Appeal from the Circuit Court |
| Plaintiffs-Appellants, | ) | of Cook County. |
| | ) | |
| v. | ) | No. 2020 CH 05597 |
| | ) | |
| BIG TUNA'S INC., 21 BURLINGTON LLC-5 | ) | The Honorable |
| BURLINGTON, DANIEL POWERS, and PATRICK | ) | Patrick Sherlock, |
| POWERS, | ) | Judge Presiding. |
| | ) | |
| Defendants-Appellees. | ) | |
| | ) | |

_____

JUSTICE REYES delivered the judgment of the court.
Presiding Justice Martin and Justice Lampkin concurred in the judgment.

**ORDER**

¶ 1    *Held:*  The circuit court's judgment is affirmed, where (1) the circuit court properly denied plaintiffs' motions to amend their complaint and (2) the record on appeal is inadequate to support plaintiffs' contentions of error concerning the damages award.

¶ 2    Plaintiffs Kathy Defante and Jorge Morales filed a lawsuit against defendants Big Tuna's Inc., 21 Burlington LLC-5 Burlington, Daniel Powers, and Patrick Powers, alleging that defendants had violated a drainage easement located on defendants' property. After the grant

of summary judgment on one count and a bench trial on a second count, plaintiffs prevailed but were awarded nominal damages of $1. On appeal, plaintiffs contend that the circuit court erred in not permitting amendment of their complaint and in its award of damages. For the reasons set forth below, we affirm.

¶ 3                                                    BACKGROUND

¶ 4                                                    *Complaint*

¶ 5        On August 28, 2020, plaintiff Defante filed a *pro se* complaint in the circuit court of Cook County regarding the use of a drainage easement abutting her property. The complaint was subsequently amended nine times, including adding plaintiff Morales as a named party, and it is the ninth amended complaint[1] which is the subject of the instant appeal.

¶ 6        All of the complaints alleged the same basic facts. Plaintiffs resided in a single-family home in Western Springs, Illinois, which they purchased in 2019. Directly next door to their property, defendants owned and/or managed a two-flat apartment building. Defendants had purchased the property in 2016, and, at the time of purchase, it contained a five-foot public utility and drainage easement (the easement), which in part abutted the property line between defendants' property and plaintiffs' property. Plaintiffs alleged that, since defendants' purchase of the property, defendants had engaged in alterations to the area of the easement, both with and without building permits, which had changed the landscape and caused the easement to "malfunction." Specifically, plaintiffs alleged that defendants had widened the asphalt driveway on the property to encroach into the easement area, reducing the size of the

---

[1] We observe that some of the complaints are numbered incorrectly—for instance, the complaint immediately following the original complaint was entitled the "second" amended complaint, and plaintiffs filed a "seventh" amended complaint despite being denied leave to file their "sixth" amended complaint. For the sake of clarity, however, we refer to the complaints as titled by plaintiffs.

easement to three feet. In addition, plaintiffs alleged that defendants had landscaped the easement area in such a way as to eliminate the land depression, instead raising the area and pitching it toward plaintiffs' property. Finally, plaintiffs alleged that defendants had installed an unpermitted drain tile on the property, to which their downspouts were connected, and placed its discharge outlet to direct water runoff to plaintiffs' property; the drain tile itself was also located partially on plaintiffs' property. After multiple complaints by plaintiffs to the Village of Western Springs, the unpermitted drain tile outlet was capped, but the downspouts were still positioned to discharge toward plaintiffs' home.

¶ 7          Plaintiffs alleged that the alterations not only resulted in an unreasonable increase in the speed and amount of surface water flowing to plaintiffs' property but also blocked the water from draining anywhere else. During large rain episodes, this resulted in large amounts of surface water being "trapped in the south and east wall" of plaintiffs' home.

¶ 8          Plaintiffs alleged that defendants had violated the easement, causing damage to their property, and requested injunctive relief to enforce the easement, as well as compensation for the damage.

¶ 9          In their answer, defendants admitted to the existence of the easement and to their knowledge of its presence at the time they purchased the property. They denied, however, violating the easement.

¶ 10                                 *Chancery Division Proceedings*

¶ 11          As noted, plaintiffs amended their complaint several times throughout the litigation. After plaintiffs filed their *pro se* fourth amended complaint, which included counts for (1) easement by estoppel, (2) encroachment, (3) private nuisance, (4) public nuisance, (5) trespass, (6) "violation of rights," (7) negligence, (8) violation of easement, (9) intentional infliction of

emotional distress, and (10) "intentional and malicious intent," the parties proceeded to engage in discovery. Upon completing a large part of discovery, plaintiffs filed a *pro se* 28-count fifth amended complaint, adding the Village of Western Springs, several village officials, the former owners of the property, and several contractors to the litigation, as well as alleging several additional counts against defendants. Plaintiffs ultimately voluntarily dismissed their claims against the governmental defendants and the contractors, and were given leave to file an eighth amended complaint against the remaining defendants (the instant defendants and the former owners of the property).

¶ 12       In their eighth amended complaint, filed through counsel, plaintiffs included three counts. With respect to the defendants involved in the instant appeal, plaintiffs alleged one count, for "Trespass & Declaratory Action," requesting a declaratory judgment stating that plaintiffs had the ability to use the drainage easement and seeking an order for defendants to repair the drainage easement to correct the grading, in addition to costs and attorney fees. With respect to the former owners of plaintiffs' property, plaintiffs alleged two counts, for breach of warranty and fraudulent misrepresentation. The circuit court dismissed the count against defendants on its own motion, as it found that plaintiffs had included two causes of actions within a single count, but granted plaintiffs leave to file a ninth amended complaint to rectify the error.

¶ 13       The ninth amended complaint, which was otherwise identical to the eighth amended complaint, contained two counts against defendants—one for declaratory judgment and one for trespass. As relevant to the instant appeal, the count for trespass requested relief in the form of monetary damages for "the costs for repairing the damage to their property from the altered flow of water, the costs for correcting the water flow towards the drainage easement, the costs

to repair the drainage easement to correct the grading so that water does not pool onto the Plaintiffs' property, attorney fees and costs, and for such other and further relief as the Court deems just and proper." Plaintiffs and the former property owners subsequently reached a settlement, and they were voluntarily dismissed from the case.

¶ 14    Plaintiffs' counsel withdrew from his representation in May 2024, leaving plaintiffs once again pursuing their claims *pro se*.[2] Plaintiffs and defendants then filed cross-motions for summary judgment. In their *pro se* motion for summary judgment, plaintiffs focused on their right to use the easement, arguing that an easement arose (1) by prescription, (2) by estoppel, (3) by necessity, and (4) by implication based on prior use. In response to their motion for summary judgment, defendants denied that plaintiffs had a right to use the easement under any of the above theories. Additionally, in their cross-motion for summary judgment, defendants claimed that "[g]ravity, not Defendants' actions, caused the water to pool" on plaintiffs' property and that defendants had no duty to remedy the problem on plaintiffs' property.

¶ 15    Prior to the circuit court's ruling on the cross-motions for summary judgment, plaintiffs filed a motion for leave to amend their complaint to include a request for punitive damages. The circuit court, however, denied plaintiffs' motion with prejudice on August 15, 2024.

¶ 16    On August 26, 2024, the circuit court ruled on the parties' cross-motions for summary judgment. As to count I of the ninth amended complaint, for declaratory judgment, the circuit court noted that "[t]he parties make various arguments regarding prescriptive easements, implied easements, easements by estoppel and easements by necessity." The circuit court,

---

[2] Plaintiffs were represented by counsel from June 2, 2022, through May 16, 2024, which encompassed the filing of their eighth and ninth amended complaints. Counsel's motion to withdraw indicated that he had been retained to represent plaintiffs since August 2021, but the record indicates that all of the court filings between August 2021 and June 2022 were filed *pro se*. We also observe that plaintiffs conducted all of the depositions in the litigation *pro se*.

however, found that "[n]one of these arguments are applicable to the facts of this case because an express easement exists." The circuit court found that the deed to defendants' property "contains an express public drainage easement," a fact which it noted that defendants admitted in their answer to the ninth amended complaint. The circuit court thus found that an express drainage easement existed on defendants' property and that plaintiffs were entitled to use the easement without interference from defendants. As such, the circuit court granted summary judgment in favor of plaintiffs on count I.

¶ 17     With respect to count II of the complaint, for trespass, the circuit court observed that, in order to prevail on the claim, plaintiffs would need to establish that the driveway work performed by defendants in 2016 caused the water flow issues alleged in plaintiffs' complaint. As both parties submitted evidence in support of their positions, the circuit court found that "granting summary judgment for either party on the trespass claim would require this court to weigh the evidence and make credibility determinations." Accordingly, the circuit court found that such a determination was inappropriate for summary judgment and denied both parties' motions with respect to count II.

¶ 18     On August 28, 2024, the circuit court entered an order transferring the matter from the chancery division to the law division, "[b]ecause no other equitable counts remain."

¶ 19                              *Law Division Proceedings*

¶ 20     After the matter was transferred to the law division, it was set for trial in early February 2025.

¶ 21     On November 1, 2024, plaintiffs filed a petition to vacate the circuit court's August 15, 2024, order denying their motion for leave to amend their complaint. Plaintiffs alleged that the chancery division judge lacked the jurisdiction to grant the requested relief on their trespass

claim, and further alleged that denying their motion without an evidentiary hearing was improper. On November 14, 2024, prior to the ruling on their petition to vacate the August 15, 2024, order, plaintiffs also filed a motion for leave to amend their complaint to include a request for punitive damages and for injunctive relief. Specifically, in addition to their previous request to include punitive damages, plaintiffs claimed that, despite the circuit court's grant of summary judgment with respect to the declaratory judgment count, "defendants continue to refuse to have the drainage easement repaired, to be able to convey water away from [plaintiffs' property]." As such, plaintiffs requested injunctive relief to enforce plaintiffs' rights to the drainage easement in accordance with the prior court order. Both plaintiffs' petition to vacate the August 15, 2024, order and their motion for leave to amend the complaint were denied on November 21, 2024.

¶ 22    A bench trial occurred in early February 2025; there is no report of proceedings or bystander's report from the trial. The record on appeal, however, contains two evidence depositions from defendants' liability experts, as well as a discovery deposition of John Paskvan, the former owner of plaintiffs' property, which was permitted to be admitted as evidence following Paskvan's death. In Paskvan's deposition, he testified that he had not observed any problems with drainage while he owned the property.

¶ 23    Chad Fischer, a licensed professional and structural engineer, testified that he had been retained by defendants to prepare an investigative report regarding plaintiffs' claims. As part of his report, Fischer opined that the easement on defendants' property was a utility easement, not a drainage easement, and, as such, there was no obligation for defendants to grade or otherwise provide drainage to both properties. Fischer's opinion as to the character of the easement was based in part on the report of defendants' second expert, Jason Doland, and he

relied upon Doland's characterization as part of his analysis. On cross-examination, Fischer testified that if it was a drainage easement, "it would be a separate set of conditions that would be required to be evaluated," based on "a whole lot of things, based on site, location, requirements of the local municipalities. There's many variables involved." Fischer further clarified that "I did not make an assessment of whether or not it's working as a drainage easement. My opinion is it's not a drainage easement. It's a utility easement."

¶ 24    Fischer further opined that plaintiffs' property was a poorly draining property by its nature, as the property did not have adequate drainage away from plaintiffs' house. Instead, there were low spots alongside the house which would allow water to accumulate, as well as a concrete pad for an air conditioner which prevented water from freely draining away from the house. Fischer disagreed with the conclusion of plaintiffs' expert that defendants' repaved driveway altered the slope of the driveway, based on a topological report prepared by Doland, as he opined that the measurement tool used by plaintiffs' expert was inappropriate for such detailed analysis.[3] On cross-examination, however, Fischer testified that based on the topographic survey, the pitch of defendants' land was toward plaintiffs' land.

¶ 25    Jason Doland, a civil engineer, testified that he was retained to determine the proper easement designation on defendants' property, as well as to determine whether the current driveway was consistent with the slope of the previous driveway. As to the first question, Doland opined that the easement was a utility easement, not a drainage easement.[4] With respect

_____

[3] Plaintiffs' expert, licensed professional engineer and certified floodplain manager Christopher Hanstad, appears to have testified as a live witness during the trial, so his testimony is not contained in the record on appeal. He, however, prepared a report in which he opined that the driveway work altered the flow of water from defendants' property, based on the use of Light Detection and Ranging (LiDAR) technology and a 2020 topographic survey.

[4] We note that defendants' counsel questioned both Doland and Fischer at length about their opinions that the easement was not a drainage easement, despite the circuit court's express finding to the contrary in its grant of summary judgment and over plaintiffs' repeated objections. Curiously, counsel

to the second question, Doland testified that he visited the property, took photographs, and performed topographic mapping. Doland disagreed with the conclusions of plaintiffs' expert as to the flow of water from defendants' property, and also disagreed with the measurement tool used by the expert, as he opined that it was not sufficiently accurate for the purpose. Dolan opined that "there is no documentation that can verify that the driveway slopes have changed with the resurfacing from 2008 to present."

¶ 26       On February 6, 2025, the circuit court entered an order finding that plaintiffs established a "small trespass caused by the installation of a drainage ditch installed by the defendants that appears to encroach on plaintiffs' property," which the circuit court found to be "extremely minor." The circuit court further found that "[a]ll of plaintiffs' other contentions concerning trespass were not supported by the evidence in the case." The circuit court additionally found that plaintiffs had not established any monetary damages as a result of the trespass, and awarded nominal damages in the amount of $1, plus the costs of the suit.

¶ 27       Plaintiffs filed a motion for reconsideration, which was denied, and this appeal follows.

¶ 28                                ANALYSIS

¶ 29       In this *pro se* appeal, plaintiffs raise three issues: (1) that the circuit court erred in denying their motions to amend the complaint to add a request for punitive damages, (2) that the circuit court erred in denying their motion to amend the complaint to include a request for injunctive relief, and (3) that the circuit court erred in its damages award.

---

suggested at Doland's deposition that "the motion for summary judgment order did not adjudicate that *** the easement was a drainage easement. It used the terminology that the plaintiffs used in its decision, and the conclusion and decision made by the Court had nothing adjudicating the easement as a drainage easement." The circuit court, however, made clear in its order that "[t]he deed to [defendants' property] contains an express public drainage easement." Indeed, as the circuit court noted in its order, "[d]efendants admitted this in their Answer to the Ninth Amended Complaint." Counsel's interpretation of the summary judgment order is, quite simply, incorrect.

¶ 30    As an initial matter, however, we briefly address comments made by defendants concerning plaintiffs' brief on appeal. First, defendants correctly observe that plaintiffs improperly include purported testimony and trial court comments occurring during the trial of this matter, despite the fact that there is no report of proceedings, bystander's report, or agreed statement of facts contained in the record on appeal. See Ill. S. Ct. R. 323 (eff. July 1, 2017). All facts contained in the appellant's brief must contain appropriate references to the record on appeal (Ill. S. Ct. R. 341(h)(6) (Oct. 1, 2020)), and a party may not rely on matters outside the record to support its position on appeal (*Waukegan Hospitality Group, LLC v. Stretch's Sports Bar & Grill Corp.*, 2024 IL 129277, ¶ 20). We accordingly disregard any factual material which is not supported by the record on appeal.

¶ 31    Defendants also suggest that plaintiffs use "fictional quotation[s]" several times throughout their brief. Defendants are correct that the *pro se* plaintiffs on occasion improperly use quotation marks when discussing certain propositions of law. We observe, however, that the propositions of law cited by plaintiffs do, in fact, appear in the cases cited and the propositions of law are accurately conveyed, albeit paraphrased. We further observe that defendants' suggestion that two cases cited by plaintiffs are cited under the incorrect name is itself incorrect, as plaintiffs' citations are accurate. Moreover, even if defendants had been correct, the purported errors in the case names—whether or not the word "City" appears in the name of the municipality at issue—are so inconsequential that we question why they warrant being brought to the attention of this court, especially when the party raising the issue is represented by counsel and the opposing party is proceeding *pro se*.

¶ 32    We would also be remiss not to note that defendants themselves have included several citations which violate supreme court rules. Specifically, in arguing that plaintiffs included

facts in their brief which are not contained in the record on appeal, defendants primarily rely on two unpublished appellate court decisions issued in 2019. Unpublished orders entered pursuant to Rule 23(b) may be cited for persuasive purposes only if they were filed on or after January 1, 2021. Ill. S. Ct. R. 23(e) (eff. June 3, 2025). The decisions cited by defendants, which were issued prior to that date, therefore should not have been cited for any reason. See *In re Marriage of Chapa*, 2022 IL App (2d) 210772, ¶ 24 (pre-2021 orders "are nonprecedential and should not have been cited for any reason"); *Rivas v. Benny's Prime Chophouse, LLC*, 2025 IL App (1st) 242044, ¶ 97 n.5 (pre-2021 orders "may not be cited in this court, even as persuasive authority").

¶ 33    Apart from our disregard of the facts which are unsupported by the record on appeal, we cannot find that any of the errors in the parties' briefs hinders our review of their arguments on appeal. We caution all parties, however, to ensure briefs comply with the supreme court rules in the future. We turn, then, to considering the merits of plaintiffs' claims on appeal.

¶ 34                        *Motions to Amend – Punitive Damages*

¶ 35    We first consider plaintiffs' arguments concerning the denial of their motions to amend the complaint to add a request for punitive damages. The decision as to whether to permit amendment of pleadings is within the discretion of the circuit court, and we will not reverse its decision absent an abuse of that discretion. *Jones v. O'Brien Tire & Battery Service Center, Inc.*, 374 Ill. App. 3d 918, 936 (2007). In determining whether to grant leave to amend, a court should consider four factors: (1) whether the proposed amendment would cure the defective pleading, (2) whether other parties would sustain prejudice or surprise by virtue of the proposed amendment, (3) whether the proposed amendment is timely, and (4) whether previous

11

opportunities to amend the pleadings could be identified. *Loyola Academy v. S&S Roof Maintenance, Inc.*, 146 Ill. 2d 263, 273 (1992).

¶ 36    Certain amendments concerning punitive damages, however, are governed by section 2-604.1 of the Code of Civil Procedure (Code) (735 ILCS 5/2-604.1 (West 1994)[5]). Punitive damages are not awarded as compensation but serve instead to punish the offender and to act as a deterrent against similar acts of wrongdoing in the future. *Loitz v. Remington Arms Co.*, 138 Ill. 2d 404, 414 (1990). Due to their penal nature, punitive damages are not favored under the law. *Id.* As such, the legislature enacted section 2-604.1 of the Code to discourage plaintiffs from seeking and receiving such punitive damages awards. *McCann v. Presswood*, 308 Ill. App. 3d 1068, 1071 (1999). As relevant to the instant appeal, section 2-604.1 provides that, where a plaintiff's claims are based on physical damage to property under a negligence-based theory, a plaintiff may not include a request for punitive damages in the initial complaint.[6] 735 ILCS 5/2-604.1 (West 1994). Instead, "a plaintiff may, pursuant to pretrial motion and after a hearing before the court, amend the complaint to include a prayer for relief seeking punitive damages." *Id.* If, at the hearing, the plaintiff establishes a reasonable likelihood of proving

---

[5] Public Act 89-7, which amended section 2-604.1 of the Code effective March 1995 (Pub. Act 89-7 (eff. Mar. 9, 1995)), was held to be unconstitutional in its entirety by the Illinois Supreme Court in *Best v. Taylor Machine Works*, 179 Ill. 2d 367 (1997). Accordingly, the effective version of section 2-604.1 of the Code is the version in effect prior to the March 1995 amendment. See *McCann v. Presswood*, 308 Ill. App. 3d 1068, 1073 (1999); see also *People v. Gersch*, 135 Ill. 2d 384, 390 (1990) ("The effect of enacting an unconstitutional amendment to a statute is to leave the law in force as it was before the adoption of the amendment.").

[6] Section 2-604.1 does not apply to a claim based on intentional conduct. See *Fiala v. Bickford Senior Living Group, LLC*, 2015 IL App (2d) 150067, ¶ 53. A claim for trespass may be based on either intentional or negligent conduct. See *Dial v. City of O'Fallon*, 81 Ill. 2d 548, 556-57 (1980). A reading of plaintiffs' ninth amended complaint demonstrates that it is based on negligence, as it alleges that defendants "knew or should have known" that their renovations would direct more water toward plaintiffs' property and does not allege that defendants intentionally directed such water at the property.

facts at trial sufficient to support an award of punitive damages, "[t]he court shall allow the motion to amend the complaint." *Id.*

¶ 37    In this case, plaintiffs contend that the circuit court erred in denying their motions to amend the complaint where the circuit court failed to hold an evidentiary hearing prior to ruling on either the motion filed in the chancery division or the motion in the law division. The statute, however, simply requires a hearing—there is no requirement for evidence to be presented at such a hearing. In considering a similar issue, this court has previously observed that section 2-604.1 fails to set forth a procedure for a hearing under the statute, but that the legislative history suggested that the type of hearing would be left to the discretion of the court. See *Stojkovich v. Monadnock Building*, 281 Ill. App. 3d 733, 742 (1996). In *Stojkovich*, the circuit court had before it the plaintiff's proposed amendment, answers to interrogatories, and the transcript of discovery depositions from 12 witnesses, and counsel had the opportunity to engage in argument in support of their positions based on that evidentiary material. *Id.* In finding this procedure to be sufficient, the *Stojkovich* court found that "the procedure employed by the trial court in this case was well within its discretion and provided the court with more than sufficient evidentiary material upon which to base a considered decision as to the likelihood of plaintiff proving facts at trial sufficient to support an award of punitive damages." *Id.*

¶ 38    Similarly, here, at the time that plaintiffs filed their motions to amend the complaint, the parties had completed discovery and had fully briefed their cross-motions for summary judgment. Thus, in addition to the motion for leave to amend the complaint, the circuit court had before it a wealth of evidentiary material. Indeed, there were 20 exhibits attached to plaintiffs' motion for leave to amend in the chancery division alone, including six deposition

13

transcripts, two affidavits, deeds and plats of survey, e-mail correspondence, work orders, drainage plans, and several of the parties' prior filings. The motion for leave to amend the complaint in the law division similarly contained a number of exhibits in support of the motion.

¶ 39    The record also reveals that the matter came before the chancery court for hearing on August 15, 2024, after which the motion was denied. Likewise, in the law division, the motion was denied on November 21, 2024, after a hearing at which all parties were present. While the record on appeal does not contain a transcript of the court proceedings for either date, we are satisfied that the procedure employed by the circuit court was well within its discretion and that it had adequate evidentiary material upon which to base its decision.

¶ 40    We similarly can find no error in the circuit court's denial of the motion for leave to amend in either case. The question of whether punitive damages may be awarded in a particular case is a question of law for the court. *Kelsay v. Motorola, Inc.*, 74 Ill. 2d 172, 186 (1978); *Stojkovich*, 281 Ill. App. 3d at 742. In addition, where, as here, the circuit court's decision is based on documentary evidence and not live testimony, a *de novo* review is appropriate. *Stojkovich*, 281 Ill. App. 3d at 743.

¶ 41    As noted, punitive damages are not favored in the law. *Loitz*, 138 Ill. 2d at 414. Consequently, "[i]t has long been established in this State that punitive or exemplary damages may be awarded when torts are committed with fraud, actual malice, deliberate violence or oppression, or when the defendant acts willfully, or with such gross negligence as to indicate a wanton disregard of the rights of others." *Kelsay*, 74 Ill. 2d at 186 (citing *Consolidated Coal Co. v. Haenni*, 146 Ill. 614 (1893)). In this case, we cannot find that defendants' alleged actions rose to such a level. Even taking the evidence in the light most favorable to plaintiffs, the evidence establishes only that defendants acted negligently in renovating their property.

Punitive damages, however, are not appropriate for ordinary negligence. *Loitz*, 138 Ill. 2d at 415; *Stojkovich*, 281 Ill. App. 3d at 742. Instead, our supreme court has cautioned that punitive damages are awarded for conduct which "approaches the degree of moral blame attached to intentional harm, since the defendant deliberately inflicts a highly unreasonable risk of harm upon others in conscious disregard of it." (Internal quotation marks omitted.) *Loitz*, 138 Ill. 2d at 416. Where the conduct at issue in the instant case does not rise to such a level, we cannot find that plaintiffs established a reasonable likelihood of succeeding on the merits of their punitive damages claim such that amendment should have been permitted. See 735 ILCS 5/2-604.1 (West 1994).

¶ 42　　Finally, we cannot find that the circuit court erred in denying plaintiffs' motion to vacate the first denial of leave to amend upon transfer to the law division. Plaintiffs suggest that the chancery court lacked the jurisdiction to rule on the punitive damages claim where it was based on the alleged trespass on their property, a matter which was ultimately heard in the law division. The circuit court of Cook County, however, is a court of general jurisdiction. *Fulton-Carroll Center, Inc. v. Industrial Council of Northwest Chicago, Inc.*, 256 Ill. App. 3d 821, 823 (1993); Ill. Const. 1970, art. VI, § 9. It is part of a "single trial court vested with jurisdiction to adjudicate all controversies." *Steinbrecher v. Steinbrecher*, 197 Ill. 2d 514, 530 (2001). As such, "[t]he fact that the circuit court, for administrative purposes, has established divisions to hear certain types of cases does not affect its jurisdiction to hear all justiciable matters, and does not affect the power of any of its judges to hear and dispose of any matter properly pending in the circuit court." *Fulton-Carroll Center*, 256 Ill. App. 3d at 823; see also *New Capital Home, Inc. v. Kogut*, 2023 IL App (1st) 220940-U, ¶ 54. Accordingly, the fact that plaintiffs' punitive damages request was initially considered by the chancery court before the

matter was ultimately transferred to the law division has no effect on the validity of the order and the motion to vacate on that basis was properly denied.

¶ 43                                    *Motion to Amend – Injunctive Relief*

¶ 44        Plaintiffs additionally claim that the circuit court erred in denying their motion for leave to amend the complaint in the law division, where they sought to include a request for injunctive relief. As noted, a court should consider four factors in determining whether to grant leave to amend: (1) whether the proposed amendment would cure the defective pleading, (2) whether other parties would sustain prejudice or surprise by virtue of the proposed amendment, (3) whether the proposed amendment is timely, and (4) whether previous opportunities to amend the pleadings could be identified. *Loyola Academy*, 146 Ill. 2d at 273. The decision as to whether to permit amendment of pleadings is within the discretion of the circuit court, and we will not reverse its decision absent an abuse of that discretion. *Jones*, 374 Ill. App. 3d at 936.

¶ 45        Here, in the motion for leave to amend the complaint filed in the law division, plaintiffs claimed that, after the circuit court's grant of summary judgment on the declaratory judgment count, they sought to repair the grading of the drainage easement, but defendants refused. Accordingly, plaintiffs requested leave to amend their complaint to seek the following injunctive relief for their trespass count, in addition to monetary damages: (1) repair of the easement to correct the grading, (2) an injunction to prevent defendants from interfering in plaintiffs' full use and maintenance of the easement, and (3) an injunction to prevent defendants from performing work in the easement without plaintiffs' approval "to ensure no interference with" plaintiffs' easement rights. The circuit court, however, denied plaintiffs' motion. We cannot find that this denial constituted an abuse of discretion.

¶ 46    Plaintiffs' proposed amended complaint would not cure any defects in their prior complaint, as nearly all of the relief they sought in the proposed amended complaint was already included in their ninth amended complaint. First, their request that defendants be prevented from interfering in plaintiffs' use of the easement was included in their declaratory judgment count and, indeed, the circuit court granted that relief when it granted summary judgment in plaintiffs' favor on that count. While plaintiffs claimed that defendants were not abiding by that order, adding a request for that same relief in a different count would not resolve that issue. Instead, the proper procedure to allege noncompliance with a court order would be through a petition for rule to show cause. See, *e.g.*, *Johnson v. Godonis*, 259 Ill. App. 3d 698, 700 (1994) (after circuit court entered judgment finding an easement in favor of plaintiff, plaintiff filed petition for rule to show cause when defendants sought to build a fence which allegedly interfered with her easement rights).

¶ 47    In addition, plaintiffs' proposed amended complaint requests "[f]or the 5-foot drainage easement *** [to] be repaired, to correct the grading so that water does not pool onto the Plaintiffs' property." In their ninth amended complaint, however, they requested an award of "the costs to repair the drainage easement to correct the grading so that water does not pool onto the Plaintiffs' property" (a request we observe is also repeated in the proposed amended complaint). The only difference between the proposed language and the existing language is the use of the passive voice—leaving it ambiguous as to *who* was to perform the repair. To the extent that this can be read as a request for *defendants* to perform the repair, it is arguably inconsistent with their request for repair costs and, in any event, is not something which the circuit court was required to permit. Accordingly, where the relief requested in the proposed amended complaint is largely duplicative of the relief already requested, we cannot find that

the circuit court abused its discretion in denying plaintiffs' motion for leave to amend the complaint.

¶ 48                                                                 *Damages Award*

¶ 49        Finally, plaintiffs contend that the circuit court erred in awarding only nominal damages of $1. In a bench trial, as in the instant case, it is the function of the trial judge to weigh the evidence and make findings of fact. *Kalata v. Anheuser-Busch Cos.*, 144 Ill. 2d 425, 433 (1991). On review, we will not disturb the trial court's findings of fact unless they are against the manifest weight of the evidence. *Eychaner v. Gross*, 202 Ill. 2d 228, 251 (2002). "A decision is against the manifest weight of the evidence only when an opposite conclusion is apparent or when the findings appear to be unreasonable, arbitrary, or not based on the evidence." *Id.* at 252. Importantly, "[t]he court on review must not substitute its judgment for that of the trier of fact." *Kalata*, 144 Ill. 2d at 434; *Eychaner*, 202 Ill. 2d at 252. The deference owed to the factfinder includes its damages award. See *Snover v. McGraw*, 172 Ill. 2d 438, 447 (1996); see also *In re Estate of Halas*, 209 Ill. App. 3d 333, 349 (1991) ("On appeal following a bench trial, a reviewing court cannot reverse the trial judge's determination of damages unless that determination is against the manifest weight of the evidence.").

¶ 50        Trespass entitles a plaintiff to at least nominal damages. *Chicago Title Land Trust Co. v. JS II, LLC*, 2012 IL App (1st) 063420, ¶ 77. In this case, the circuit court determined that only nominal damages were required, based on the encroachment of the drainage tile onto plaintiffs' property, and awarded them $1. On appeal, plaintiffs argue that the circuit court's order was against the manifest weight of the evidence where the encroachment constituted a continuing trespass. In their reply brief, plaintiffs also argue that the circuit court erred in not awarding damages for any other aspect of their trespass claim.

¶ 51     In ruling on plaintiffs' trespass claim, the circuit court found that the only trespass established by the evidence was the physical encroachment of a portion of defendants' drain tile onto plaintiffs' property. It further determined that the encroachment was minimal, and that an appropriate damages award was $1. We have no basis to review plaintiffs' contention as to the inadequacy of the damages award, as the record on appeal contains no report of proceedings or other memorialization of the evidence presented at trial. It is well settled that an appellant has the burden of presenting a sufficiently complete record to support any claims of error, and in the absence of such a record, "it will be presumed that the order entered by the trial court was in conformity with law and had a sufficient factual basis." *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92 (1984). Nominal damages are appropriate where the plaintiff has not established actual harm (*Chicago Title Land Trust*, 2012 IL App (1st) 063420, ¶ 77) or where the plaintiff has not provided a proper basis for computing damages (*Nordness v. Mitek Corp.*, 286 Ill. App. 3d 761, 764 (1997)). In this case, we have no way of knowing what, if any, evidence was presented concerning defendants' drain tile, and so cannot find that the circuit court erred in awarding $1, despite the fact that the trespass is a continuing one.

¶ 52     We similarly cannot find any error in the circuit court's findings as to the trespass claims which were based on defendants' renovations within the easement. First, plaintiffs raised this argument for the first time in their reply brief, so it has been forfeited on appeal. Ill. S. Ct. R. 341(h)(7) (Oct. 1, 2020) (points not argued in the appellate brief are forfeited and may not be raised in the reply brief). In addition, forfeiture aside, plaintiffs' claims suffer from the same lack of evidentiary support from the record on appeal as their damages claim.

¶ 53     An easement is a right or privilege in the real estate of another, and it is considered appurtenant when the easement requires both a dominant and a servient estate. *McMahon v.*

*Hines*, 298 Ill. App. 3d 231, 235 (1998). The holder of the right to use the easement is referred to as the dominant estate, while the used land is referred to as the servient estate. *Id.* at 235-36. Here, plaintiffs have the dominant estate, while defendants have the servient estate, as plaintiffs have the right to use the easement located on defendants' property.

¶ 54    As the owners of the dominant estate, plaintiffs are entitled to necessary use of the easement, meaning use that is reasonably necessary for full enjoyment of the premises. *Id.* at 236. Defendants, as the owners of the servient estate, may not interfere with the use of the easement. *Id.* at 239. They may, however, use their property for any purpose consistent with plaintiffs' enjoyment of the easement. *Id.* "As no precise rule can be stated as to when the use by the owner of the servient or dominant estate is a reasonable use as distinguished from an unreasonable use, it is a question of fact to be determined from the facts and conditions prevailing." *Id.* at 239-40 (citing *Professional Executive Center v. La Salle National Bank*, 211 Ill. App. 3d 368, 379 (1991)).

¶ 55    In the context of easements, trespass occurs when there is a material interference with the right of the owner of the dominant estate to reasonable use of the easement. *Chicago Title Land Trust*, 2012 IL App (1st) 063420, ¶ 76. In this case, plaintiffs contended that defendants not only prevented plaintiffs from using the easement at all, but also performed renovations on the property within the easement which resulted in increased water flow toward plaintiffs' property. In its order, the circuit court found no merit to plaintiffs' claims, finding that "[a]ll of plaintiffs' other contentions concerning trespass [apart from the physical encroachment of the drainage tile] were not supported by the evidence in the case."

¶ 56    The only evidence in the record on appeal concerning the evidence presented at trial on these issues consists of the evidence depositions of defendants' experts, Fischer and Doland,

20

as well as the discovery deposition of the former owner of plaintiffs' property. The testimony provided by defendants' experts is, in our view, potentially problematic, as both experts opined that the easement was a utility easement, not a drainage easement, and Fischer testified on cross-examination that if it was a drainage easement, "it would be a separate set of conditions that would be required to be evaluated," based on "a whole lot of things, based on site, location, requirements of the local municipalities. There's many variables involved." Fischer further clarified that "I did not make an assessment of whether or not it's working as a drainage easement. My opinion is it's not a drainage easement. It's a utility easement." The question of whether the easement was a drainage easement, however, should not have been at issue at trial—the matter had been resolved in the chancery court when plaintiffs prevailed on their declaratory judgment count. To the extent, then, that the expert testimony was based on analysis of the property as a utility easement, not a drainage easement, such testimony should have been weighted accordingly.

¶ 57    As noted, however, the problem is that we have no basis for determining what other evidence was presented to the circuit court, or what weight it afforded any of that evidence. Consequently, we must find that, even if the issue had not been forfeited, the circuit court's findings were not against the manifest weight of the evidence.

¶ 58                                  CONCLUSION

¶ 59    For the reasons set forth above, the circuit court's judgment is affirmed. The circuit court did not err in denying plaintiffs' motions for leave to amend their complaint, either in the chancery division or in the law division. Additionally, we have no basis for reviewing plaintiffs' damages claims and consequently affirm the circuit court's judgment.

¶ 60    Affirmed.